IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| QUINTIN LEE ALONZO,<br>                Petitioner, | §<br>§<br>§ |
| VS. | § Civil Action No. 3:07-CV-399-O (BH)<br>§ |
| NATHANIEL QUARTERMAN, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br>                Respondent. | §<br>§<br>§<br>§ |

**ORDER STAYING AND ABATING**
**PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is a petition for writ of habeas corpus filed by petitioner Quintin Lee Alonzo on March 2, 2007, in which he challenges a conviction for murder. After consideration of the relevant filings, evidence and applicable law, the Court hereby **STAYS** this action to allow petitioner an opportunity to present unexhausted claims to the state court.

**I. BACKGROUND**

A. **Factual and Procedural History**

Alonzo was tried in February of 2003 for shooting an eighteen-year-old man and both of his parents at a graduation party in June of 2001, resulting in the death of the son. At trial, the identity of the shooter was the only contested issue. The evidence reflected that over 100 people attended this party at a private residence, and that numerous people shot guns at the party after a disagreement between rival gang members. (R. 3:27-30, 70-71, 84, 96, 107-09). Ballistics evidence and DNA evidence presented at trial established that the same gun was used to shoot all three people, although the gun was never recovered. (R. 3:132-36, 170, 178, 17). One of the surviving victims identified Alonzo as the man who shot him, as did one of the guests at the party; both persons had previously identified Alonzo as the victims' shooter from photographic line-ups. (R. 3:31, 51-52, 94-96).

Alonzo never disputed that he was at the party. His defense was that another man who resembles him, Licho Escamilla,[1] shot the three victims. Alonzo presented testimony from two other people who were at the party that they saw Alonzo at a different location at the residence at the time of the shooting, and that they never saw him with a gun. Alonzo also presented testimony from other individuals that Alonzo and Escamilla look similar. Finally, he presented evidence that Escamilla was at the party and was initially considered by the police as a suspect in the case because there had been rumors circulating that he was the guilty party, and there was evidence that he was shooting a gun at the party. (R. 3:157, 160-62, 167; R. 4:47-49, 79-80, 126, 134-35, 150). The State acknowledged in closing statements that Escamilla was at the party and was probably shooting a gun at the party, but maintained that the evidence showed that Alonzo was the one who shot the three victims, killing one of them. (R. 4:198, 202). Alonzo was convicted of murder and two aggravated assaults.

On direct appeal, Alonzo challenged the sufficiency of the evidence to support his convictions and alleged ineffective assistance of counsel and various trial errors. His convictions and sentences were affirmed. *See Alonzo v. State*, Nos. 05-03-00234-CR, 05-03-00235-CR, 05-03-00654-CR (Tex. App.-Dallas July 26, 2004). Counsel filed a state habeas application on behalf of Alonzo on February 22, 2006, that challenged the three convictions. The application asserted four grounds for relief, including ineffectiveness of counsel, witness intimidation by the State, actual innocence, and insufficiency of the evidence. (State Habeas Transcript[WR-64,739-01]:7, 37). After the state filed a response to this application, and the trial court obtained an affidavit from

---

[1] Licho Escamilla was convicted of capital murder in Dallas County prior to Alonzo's trial and currently has a federal petition for writ of habeas corpus pending in the Northern District of Texas in cause #3:06-cv-2248-O. The Court uses Escamilla's spelling of his name in his own pleadings in federal court rather than the spelling used during Alonzo's trial and in the pleadings filed by the parties.

Alonzo's trial counsel, findings of fact were issued by the trial court in the two aggravated assault cases on May 9, 2006, and in the murder case on May 26, 2006. (*See* S.H.Tr.[WR-64,739-02]:29-33; S.H.Tr.[WR-64,739-03]:30-34; Supp. S.H.Tr.6/12/06[WR-64,739-01]:2-5). The clerk of the state district courts issued certifications in the murder case on June 7, 2006, and in the two aggravated assault cases on July 7, 2006, and July 20, 2006, stating that the state habeas transcripts forwarded to the Court of Criminal Appeals in each of the three cases was a "true and correct transcript of all the matters and proceedings had and done in said cause." (*See* Supp. S.H.Tr.6/12/06[WR-64,739-01]:39; S.H.Tr.[WR-64,739-02]:65; S.H.Tr.[WR-64,739-03]:48).

On June 26, 2006, the Court of Criminal Appeals received a motion from Alonzo entitled "Motion for Leave to File Addendum with Attachments." In this motion, Alonzo requested permission to add three claims, including: 1) a prosecutorial misconduct claim, in which he alleged that the prosecution elicited false testimony from a homicide detective when the detective testified on more than one occasion that no-one had identified anyone else as the person who shot the three victims; 2) a claim that his trial attorney was ineffective for failing to object to this misconduct, to discover the police report which supports the misconduct claim, and to interview the potential witness who allegedly identified another as the person who shot the victims; and 3) a claim that his trial attorney was ineffective for failing to object to testimony regarding gang activity. (Supp. S.H.Tr.6/26/06[WR-64,739-01]:1-8). On July 20, 2006, the Court of Criminal Appeals received a *pro se* motion from Alonzo entitled "Motion for Leave to Submit Evidence in Support of Pending Habeas," along with several additional exhibits that were not submitted to the trial court in support of the initial state application. (Supp. S.H.Tr.7/20/06[WR-64,739-02]:2-7). The Court of Criminal Appeals sent Alonzo a letter dated July 20, 2006, in which that court acknowledged receipt of the

3

additional evidence and informed him that his writ of habeas corpus was pending. (*Id*. at 1).  Then, on July 21, 2006, and January 26, 2007, that court received additional *pro se* motions from Alonzo requesting leave to file additional exhibits in support of his habeas application, along with the additional exhibits. (Supp. S.H.Tr.7/21/06[WR-64,739-01]:1-5; Supp. S.H.Tr.1/26/07[WR-64,739-01]:1-3).  The Court of Criminal Appeals denied relief in all three cases without written order on February 7, 2007. (S.H.Tr.[WR-64,739-01]:2-5; S.H.Tr.[WR-64,739-02]:cover; S.H.Tr.[WR-64,739-03]:cover).

**B.     Substantive Issues**

Alonzo's federal petition only states that he is seeking relief from the murder conviction. (Petition at 2).  It asserts four grounds for relief, including a claim of prosecutorial misconduct, a claim that his due process rights were violated, an actual innocence claim, and a claim of ineffective assistance of counsel.[2]  In its response, filed on August 22, 2007, Respondent asserts initially that Alonzo has failed to exhaust his prosecutorial misconduct and due process claims because they were not included in his initial state habeas application.  In his reply brief, filed on September 17, 2007, Alonzo asserts that he did exhaust these claims because they were submitted to the Court of Criminal Appeals and that court denied relief in all three of his cases.

## II. ANALYSIS

**A.     Exhaustion**

Applicants seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief.  28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169

---

[2] Alonzo also raises a fifth ground, in which he alleges that when newly discovered and presented evidence is considered, the evidence is insufficient to support his conviction.  This claim is in actuality a restatement of his actual innocence claim.

F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 30; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). For purposes of exhaustion, the Texas Court of Criminal Appeals is the highest court in the state. *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir. 1985). Thus, a Texas prisoner may satisfy the exhaustion requirement by presenting both the factual and legal substance of his claims to the Texas Court of Criminal Appeals in either a petition for discretionary review or a post-conviction habeas corpus proceeding pursuant to article 11.07 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (Vernon 2004); *Anderson v. Johnson*, 338 F.3d 382, 388 n.22 (5th Cir. 2003).

When a petitioner fails to exhaust his claims in state court, a federal court has the discretion to either stay and abate or dismiss the action. *See Brewer v. Johnson*, 139 F.3d 491, 493 (5th Cir. 1998). Stay and abeyance should be granted only in limited circumstances when there is good cause for the failure to exhaust, the unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. *See Rhines v. Weber*, 544 U.S. 269, 278 (2005).

In this case, Respondent alleges that Alonzo failed to exhaust his prosecutorial misconduct and due process claims because they were not presented to the trial court and were not filed in accordance with state law. While it is difficult to discern what the Court of Criminal Appeals considered before issuing denials without written orders in each of these three case, this Court is in agreement with respondent that based on the record before this Court, it appears unlikely that Alonzo's supplemental claims and the supplemental evidence in support were considered and ruled

5

on by the Court of Criminal Appeals. None of the trial court findings address either Alonzo's prosecutorial misconduct or due process claims, and the state habeas transcripts for each of the three cases were forwarded to the Court of Criminal Appeals before much of the additional evidence was even received by the Court of Criminal Appeals. As noted by respondent, under state law, an application for writ of habeas corpus must be filed with the clerk of the court in which the conviction is being challenged, and the Court of Criminal Appeals has held that in the absence of compelling and extraordinary circumstances, that court would not consider evidence filed in that court after findings had been issued by the trial court. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 § 3(b) (Vernon 2004); *Ex parte Simpson*, 136 S.W.3d 660, 668-69 (Tex. Crim. App. 2004). Alonzo's supplemental claims and evidence were not, evidently, filed in the convicting court before that court decided his cases, and there is no indication in the record before this Court that the Court of Criminal Appeals considered any of this information before denying relief. Accordingly, because these additional claims and additional evidence were not considered by the trial court or the Court of Criminal Appeals, they were not fairly presented to that court and were therefore not exhausted at the state level. *See Fisher*, 169 F.3d at 30.

**B.      Stay**

When a petitioner fails to exhaust his claims in state court, a federal court has the discretion to either stay and abate or dismiss the action. *See Brewer v. Johnson*, 139 F.3d 491, 493 (5th Cir. 1998). Stay and abeyance should be granted only in limited circumstances when there is good cause for the failure to exhaust, the unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. *See Rhines v. Weber*, 544 U.S. 269, 278 (2005).

In this case, Alonzo suggested in the motions he filed with the Court of Criminal Appeals that the new evidence he submitted was previously unavailable to him (S.H.Tr.7/20/06[WR-64,739-02]:motion), an indication that he might be able to show good cause for failing to exhaust these claims. Moreover, Alonzo filed his motions within months of the date on which his initial state application was filed and was therefore apparently not dilatory in asserting these claims. Finally, Alonzo has provided evidence in support of his claim of prosecutorial misconduct. He has submitted to the Court of Criminal Appeals and this Court an investigative report from the homicide detective who investigated this case, Mike Berry. This report states that the detective interviewed a witness named Priscilla Rodriguez, that she identified Alonzo from a photograph as being at the party and throwing bottles, and she identified Licho Escamilla from a photograph as being the one who shot the victim who died. (S.H.Tr.7/20/06[WR-64,739-02]:motion, attachment #7).[3] However, at trial, Detective Berry testified at various times during direct examination that no-one identified Licho Escamilla as being the person who shot Guana (R. 4:164), that none of the evidence the police collected indicated that Licho Escamilla was the one who shot either Gauna or Israel and Cynthia Martinez (R. 3:167), and that no-one who looked at photo line-ups excluded Alonzo as being the person who killed Guana or who shot the other two individuals. (R. 3:168).

The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of false evidence that, although not solicited, is not corrected,

---

[3] As support for his ineffective assistance of counsel claim contained within his initial state application, Alonzo submitted an affidavit from Priscilla Rodriguez. In this affidavit, Rodriguez states that she spoke with the detective on June 27, 2001, identified Escamilla from a photo line-up as the one who shot one of the victims, was willing to testify at trial, but was never contacted by defense counsel, despite leaving several messages for him (S.H.Tr.[WR-64,739-01]:110-11). In his affidavit obtained by the trial court, trial counsel disputed this account, stating that he tried to contact her numerous times and was never able to locate her, but he makes no reference to the detective's investigative report regarding Rodriguez. (Supp. S.H.Tr.6/12/06[WR-64,739-01]:8).

7

violates a criminal defendant's due process rights, if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In the instant case, the homicide detective who investigated the case was a very important witness for the State. Moreover, in his closing statements, the prosecutor highlighted this testimony by stating that no-one identified Escamilla as shooting the victims. (R. 4:202).[4] Given that identity was a hotly contested issue at trial, that Alonzo presented alibi witnesses in response to the State's two identification witnesses, and that the person whom the defense argued actually shot the victims was admittedly at the same party and shooting a gun, the reliability of the homicide detective's testimony regarding any other witnesses who might have seen Escamilla shoot one of the victims may be determinative of guilt or innocence. The record before this Court therefore indicates that Alonzo's claim of prosecutorial misconduct may be meritorious.

Respondent concedes that it is possible that the Court of Criminal Appeals will consider a subsequent state application for writ of habeas corpus filed by Alonzo under section four of Article 11.07 of the Texas Code of Criminal Procedure if it is determined that he did not become aware of the factual basis for the claim or claims until after his original application was filed, and he was reasonably diligent in trying to obtain the documents in question by making some sort of inquiry into the matter. *See* TEX. CODE CRIM. PROC. ANN. 11.07 § 4(a)(1), (c) (Vernon 2004); *Ex parte Lemke*, 13 S.W.3d 791, 793-95 (Tex. Crim. App. 2000). Accordingly, the Court hereby **STAYS** this action, and **DIRECTS** the Clerk of the Court to mark this action CLOSED for statistical purposes. Within

---

[4] It is not clear from the record whether this police report was given to defense counsel as being potentially exculpatory evidence. Prior to trial, the lead prosecutor stated on the record that all exculpatory evidence had been given to the defense and that defense counsel would be provided the detective's notebook (R. 3:11), but defense counsel never questioned the detective about this report, despite questioning him about statements given by other various witnesses. (R. 3:157-59; R. 4:166).

8

thirty days of the date of this order, Alonzo shall present his unexhausted claims to the state court. Despite the closure of this action, the Court retains jurisdiction and may reopen the case on a motion from Alonzo filed within thirty days of exhausting his state remedies. A failure to meet either of these deadlines may provide sufficient reason to deny a motion to reopen the case.

SO ORDERED on this 23rd day of February, 2009.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**