IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| QUINTIN LEE ALONZO, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION 3:07-cv-399-O-BH |
| | § | |
| RICK THALER, | § | Referred to U.S. Magistrate Judge |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| Respondent. | § | |

## RESPONDENT'S MOTION TO CANCEL EVIDENTIARY HEARING WITH BRIEF IN SUPPORT

Petitioner, Quintin Alonzo, challenges his state conviction for murder by means of a petition for writ of habeas corpus pursuant to 28 U.S.C. Sections 2241 and 2254, which provide the court with jurisdiction over the subject matter and the parties. The Respondent, Rick Thaler (the Director) filed an Answer on August 22, 2009 arguing, *inter alia*, that Alonzo's claims that the prosecutor committed misconduct by eliciting false testimony from one of the State's witnesses and that his trial attorney was ineffective in failing to object to the alleged misconduct were unexhausted. Answer at 10-11, 22. On February 23, 2009, the Honorable Judge Reed C. O'Connor entered the Order Staying Alonzo's Petition, ordering Alonzo to file a second state-writ application and exhaust his procedural misconduct and related ineffective assistance of counsel claim. Docket Entry (DE) 18. On April 15, 2009, Alonzo filed an application for a state

writ of habeas corpus raising his procedural misconduct and related ineffective assistance of counsel claim.   SHCR-04 at 2, 7, 8, 14-18 (prosecutorial misconduct), 18-20(ineffective assistance of counsel).[1]   On June 22, 2009, the state habeas trial court entered findings of fact and conclusions of law finding that Alonzo was not entitled to file another application because he failed to allege "'specific facts'" justifying the successive filing. *Id.* at 127-128. The Texas Court of Criminal Appeals subsequently dismissed his application on August 5, 2009.  *Id.* at cover (citing section 4(a)-(c) of article 11.07 of the Texas Code of Criminal Procedure).   On August 14, 2009, Alonzo filed a "Motion to Reopen" (Motion) his case.  DE 20.  His Motion was granted on November 17, 2009.  DE 21.   This Court, then, on November 23, 2009 issued an "Order Setting Evidentiary Hearing" (Order) to address the following three grounds:

1.  whether the prosecutor committed misconduct by eliciting false testimony from a State's witness;
2.  whether Alonzo's trial attorney was ineffective for failing to object to the alleged false testimony; and
3.  whether Alonzo's trial attorney was ineffective for failing to call additional eyewitnesses at trial.

Order at 1.

The Director believes the evidentiary hearing is unwarranted.   First,

---

[1] "SHCR" refers to the clerk's Record of pleadings and documents filed with the court during Alonzo's state habeas corpus proceedings. *See generally*, *Ex parte Alonzo*, Application No. 64,739. Alonzo's most recent state-writ records were filed in this Court on December 14, 2009, consisting of Alonzo's fourth, fifth and sixth applications.

because Alonzo's prosecutorial misconduct and related ineffective assistance of counsel claims are now procedurally defaulted, Alonzo is not entitled to an evidentiary hearing on these three claims.  *See Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992) (petitioner entitled evidentiary hearing on defaulted claims "if he can show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure").  Second, even if Alonzo could excuse the default, he is not entitled to an evidentiary hearing on those defaulted claims because he failed to develop the factual bases for those claims in state court, thus, cannot meet the mandates 28 U.S.C. § 2254(e)(2).  (West 2009).  Last, Alonzo's claim that his trial attorney was ineffective for failing to call various eyewitnesses at trial was fully developed in state court, thus, the record without expansion is sufficient to determine whether the state court's adjudication is an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).  *See* 28 U.S.C. §2254(d) (West 2009).

## I.   Alonzo Cannot Overcome Two Formidable Barriers Preventing An Evidentiary Hearing Addressing His Prosecutorial Misconduct and Related Ineffective Assistance of Counsel Claim.

Before he is entitled to an evidentiary hearing, Alonzo must first excuse his procedural default under *Coleman* and meet the mandates of section 2254(e)(2) and *Williams v. Taylor*, 529 U.S. 420 (2000).

Alonzo claims that the state prosecutor, David Alex, elicited false

testimony on three different occasions from a Dallas Police Officer, Rick Berry. Fed. Pet. at 7, 7a, 7b. Specifically, Alonzo refers to page 168 of volume 3 of the trial transcript and pages 164 and 165 of volume 4 of the trial transcript. Fed. Pet. at 7a. According to Alonzo, Detective Berry's investigative report, indicating that Priscilla Rodriguez identified Santos Gauna's killer as Licho Escamilla, contradicts Detective Berry's trial testimony that none of the seventeen witnesses interviewed the night of the murder, including Priscilla Rodriguez, ever identified anybody else, including Licho Escamilla as the Gauna's killer. *Id.*

### A.   Alonzo Has Not Shown Cause and Prejudice Nor Has He Shown a Fundamental Miscarriage of Justice Excusing His Failure to Present His Claims Properly in State Court.

As indicated above, Alonzo's subsequent state-writ applications were dismissed as successive pursuant to section 4(a)-(c) of article 11.07 of the Texas Code of Criminal Procedure. SHCR-04 at cover. Since the Texas Court of Criminal Appeals dismissed Alonzo's subsequent application, Alonzo's procedural misconduct and related ineffective assistance of counsel claim are both procedurally defaulted. *See Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (recognizing Texas' abuse-of-the-writ doctrine under *Ex parte Barber*, 879 S.W.2d 889, 892 n.1 (Tex. Crim. App. 1994)). As a threshold matter, this Court should determine whether Alonzo can excuse his default before it grants him an

evidentiary hearing. *See Lambrix v. Singletary*, 520 U.S. 518, 524-525 (1997) (citing *Coleman v. Thompson*, 501 U.S. 722, 730-732 (1999) and noting, "A State's procedural rules are of vital importance to the orderly administration of its criminal courts; when a federal court permits them to be readily evaded, it undermines the criminal justice system"). Before he is entitled to an evidentiary hearing on claims that are procedurally defaulted, Alonzo must show (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or (2) that the failure to consider his claims will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 749-50.

The existence of "cause" ordinarily turns on some objective factor external to the petitioner. *Id.* at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Examples of external impediments include government interference or the reasonable unavailability of the factual or legal basis for the claim. *Id.* (citing *Carrier*, 477 U.S. at 492). A court need not address prejudice where the petitioner has failed to establish cause for the default. *Smith v. Murray*, 477 U.S. 527, 533 (1986). Assuming Alonzo could demonstrate cause for the default, he must show "'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *See Carrier*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982))

(emphasis in original).

There is a narrower exception to the cause and prejudice requirement "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent.'" *Dretke v. Haley*, 541 U.S. 659, 669 (2004) (citing *Carrier*, 477 U.S. at 496 and *Schlup v. Delo*, 513 U.S. 298 (1995)). The fundamental miscarriage of justice exception to the rule is reserved for those cases "'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)).  To show that he is actually innocent, Alonzo must provide "new, reliable evidence that was not presented at trial and must show it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." *See id.* at 644 (citing *Schlup*, 513 U.S. at 327).  New, reliable evidence includes "exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Id.* (citing *Schlup*, 513 U.S. at 324 and *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992)).

### 1.   Alonzo Cannot Show Cause For the Default.

In the Order Staying Alonzo's Petition, Judge O'Connor ordered Alonzo to return to state court and exhaust his claims.  *Id.* at 8.  Judge O'Connor pointed out that Alonzo might be entitled to file subsequent state application:

> if it is determined that he did not become aware of the factual basis
> for the claim or claims until after his original application was filed,
> and he was reasonably diligent in trying to obtain the documents in
> question by making some sort of inquiry into the matter.

*Id.* (citing Tex. Code Crim. Proc. Ann. art. 11.07 § 4(a0(1), (c) (Vernon 2004) and

*Ex parte Lemke*, 13 S.W.3d 791, 793-95 (Tex. Crim. App. 2000)).  While Alonzo

did, in fact, file three additional state-writ applications, he completely failed to

excuse his failure to raise his prosecutorial misconduct claim and related

ineffective assistance of counsel claim in his earlier applications.  The state

habeas trial court noted:

> 5.  The Court finds that although applicant has alleged three
> grounds for relief in these subsequent applications, he has not
> alleged in his subsequent applications any 'specific facts' regarding
> why he could not properly raise these issues in his initial
> applications which were denied in January 2007, since his current
> applications allege only that he 'attempted' to file the claims but
> was 'late.' (Applications, p.3).

SHCR-04 at 127.  On page three of his application, Alonzo was asked, "Please

identify the reason that the current claims were not presented and could not

have been presented on your previous application."  *Id.* at 3.  Alonzo said,

> Applicant attempted to file these claims with the original habeas
> filings but was days late.  Filed just after [the] trial court entered
> findings of fact but before transmittal to Tx. Ct. Crim. appeals.  The
> federal U.S. District Court has Ordered applicant to re-file to
> exhaust all claims while the Court retains jurisdiction.  See No.
> 3:07-CV-399-)(BH) USDC Norther District of Texas, dated 01/23/09.

*Id.*

Even though the Order Staying Alonzo's Petition clearly informed Alonzo that he had to show that the factual basis for his prosecutorial misconduct-related claims were not known to him when he filed his initial state application and that he was reasonably diligent in developing the factual basis of his claims, Alonzo did not attempt to justify the filing of his subsequent application. Clearly, the State did not prevent Alonzo from explaining why he failed to present this claim in his first state-writ application. Alonzo was given an opportunity most petitioners do not get since it is possible to apply a federal procedural bar prospectively, that is, without requiring Alonzo to return to state court. *See Emery v. Johnson*, 139 F3d 191, 194-96 (5th Cir. 1997) (applying procedural bar where petitioner's subsequent state writ *would be* dismissed as an abuse of the writ). Unlike the petitioner in *Emery*, Alonzo's prosecutorial misconduct-related claims *were* dismissed as an abuse of the writ. Claims that are presented in federal court after a state court has found them to be an abuse of the writ should be dismissed with prejudice. *See Horsley v. Johnson*, 197 F.3d 134 , 137 (5th Cir. 1999). Alonzo returned to state court and was found to have abused the state writ. He had the factual basis for his *Napue*[2] claim with him when he returned to state court and was told that he needed to make a colorable

---

[2] *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (prosecution may not knowingly use perjured testimony or allow perjured testimony to go uncorrected).

argument as to why the state courts should hear his claim.  Alonzo did not attempt to justify his failure in state court and has pointed to no state-created impediment preventing him from properly presenting his claim.  The cause and prejudice standards are equitable exceptions to procedural default, *see Haley*, 541 U.S. at 669, and it would be inequitable to allow Alonzo to prove up the merits of claims he did not allow the State to answer.  After having been given a second chance to present his claims in state court, Alonzo failed to meet a threshold pleading requirement.  Alonzo has not shown cause for the default.

Additionally, Alonzo cannot justify his failure by arguing that had difficulty getting Detective Berry's police report.[3]  Alonzo provided Priscilla Rodriguez's affidavit in his state-writ application.  SHCR-01 at 110-111.  In her affidavit, she states that on June 27, 2001, a few weeks after the shooting, she identified Licho Escamilla as Gauna's killer from a photo array.  SHCR-01 at 110.  Alonzo did not need the police report, then, to make the *Napue* claim.  Her affidavit put Alonzo's "state habeas counsel on notice of the report's existence and possible materiality." *Williams*, 529 U.S. at 439 (discussing possible *Brady* claim). The claim was readily available at the time Alonzo filed his first state

---

[3] While the Director will address what he believes might be Alonzo's excuses in overcoming the bar, he notes that he is addressing what he believes Alonzo might argue.  Alonzo bears the burden of overcoming the bar, not the Director.  *See McCleskey v. Zant*, 499 U.S. 467, 493 (1991).

application.  Alonzo, though, chose to ignore that portion of her affidavit – that she identified Licho Escamilla as the killer – and instead used the affidavit for the proposition that Hays failed to interview Rodriguez, who would have said that the shooter was a "latin male approximately 17 years of age with a fade haircut.  He entered a blue four-door Cadillac."  SHCR-01 at 62.  While her affidavit was used to criticize the performance of Alonzo's attorney, Carl Hays, who responded to this particular allegation, *see id*. [EventDate: 06/12/2006] at 8, the affidavit also should have alerted Alonzo to the existence of a police report indicating that Rodriguez has identified Licho Escamilla as Gauna's killer.

While Alonzo might attempt to blame his state-habeas attorney for the omission, his claim is without merit.  The ineffectiveness of state-habeas counsel cannot constitute cause for the default.  *See Elizalde v. Dretke*, 362 F.3d 323, 329 (5th Cir. 2004).[4]  Moreover, Alonzo has presented no evidence that the State attempted to withhold Detective Berry's police report. Alonzo was able to obtain it at some point and, if he believed he needed it to prove his claim, then he should have obtained it before he filed his first state writ.  The factual basis for his *Napue* claim was available to him when he filed his initial state-writ application; thus, Alonzo has failed to show cause for the default.

_____

[4] In fact, any excuse for the default implicating his trial attorney must itself be exhausted.  *See Edwards v. Carpenter*, 529 U.S. 446, 451-451 (2000).

-10-

## 2.   Alonzo Cannot Show Prejudice.

Alonzo cannot show that the prosecutor's misconduct and his trial attorney's failure to object to the prosecutorial misconduct worked to his *"actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *See Carrier*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. at 170) (emphasis in original).

According to Alonzo, the prosecutor engaged in misconduct when he elicited testimony from Detective Berry to the effect that no one ever identified Licho Escamilla as Gauna's killer and when he made closing remarks indicating that no one had ever identified Escamilla as the killer. Fed. Pet. at 7-7b. Additionally, Alonzo's trial attorney, Hays, who either had or should have had Detective Berry's police report reflecting Priscilla Rodriguez's statement that she saw Licho Escamilla shoot Gauna, failed to object to Detective Berry's testimony and to the prosecutor's closing remarks. Fed. Pet. at 8d-9d.

It appears from the context of Detective Berry's testimony that when he said that no one positively identified Escamilla as the killer, he was referring to the interviews conducted the night of the killing, June 9, 2001. On page 168 of volume three of the transcript, Alonzo's first example of the false testimony, Detective Berry is addressing whether anyone disqualified Alonzo as a suspect the night of the shooting. III RR 168. He noted that no one identified Alonzo as

the shooter the night of the killing. *Id.* The same holds true for the testimony appearing later in the trial. IV RR 164-165. Detective Berry was referring to the people interviewed the night of the shooting. Even Priscilla Rodriguez said she did not identify Escamilla or disqualify Alonzo the night of the shooting. Doc. 8-4, p. 19-20 of 40[5] (Rodriguez's affidavit in the federal habeas record). It was not until June 27, 2001 did Rodriguez identify Escamilla. *Id.*

Consequently, placed in context, Detective Berry's testimony was not misleading; thus, Alonzo cannot prove a *Napue* violation because he cannot show (1) that the testimony in question was actually false, (2) that the prosecutor was aware of the perjury, and (3) that the testimony was material. *See Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). Perjured testimony is material only when "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Barrientes v. Johnson*, 221 F.3d 741, 756 (5th Cir. 2000). Most importantly, on federal habeas review, the more demanding *Brecht*[6] harmless error standard also applies. *Id.* at 756. Contradictory testimony from witnesses, inconsistencies within a witness' testimony, and conflicts between reports, written statements and the trial testimony of

---

[5]   Alonzo filed a number of documents besides his federal form petition and supporting memorandum. The Director will refer to those documents by referring to the numbering system assigned by the ECF system.

[6]   *Brecht v. Abramson*, 507 U.S. 619, 637 (1993) (alleged error must have had a "substantial and injurious effect or influence in determining the jury's verdict").

prosecution witnesses do not, standing alone, establish perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989).

Alonzo cannot show that Hays failure to object to the alleged *Napue* violations and misstatement at closing. First, there is no indication that Hays had the police report; consequently, nothing in his file would have prompted him to believe that Detective Berry's testimony was false. Second, while Hays has never had an opportunity to respond to this claim, it is possible that had he seen the police report, he may have opted to forego his objection because Priscilla Rodriguez's testimony contradicted the testimony of other witnesses. Rodriguez clearly states that Alonzo was throwing bottles, thus, implicating him in some form or fashion in the melee. Antonio Garza and Lucy Montoya, however, both testified that Alonzo did not throw any bottles. IV RR 49 (Garza); IV RR 80. Alonzo could not have it both ways – either he was or was not throwing bottles. Given the contradictions, the jury could easily have discounted Rodriguez's testimony.

As for Alonzo's claim that the prosecutor's comments during closing constituted misconduct, the Director notes that generally one wayward comment does not violate the Constitution. On federal habeas corpus review of a state court conviction, the appropriate standard of review for claims of improper

argument is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  It "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Id.* The petitioner must show that the comments in question "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.*; *see also Styron v. Johnson*, 262 F.3d 438, 449 (5th Cir. 2001); *Dowthitt v. Johnson*, 230 F.3d 733, 755 (5th Cir.2000).  In order to establish this, "the petitioner must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986).

The prosecutor's comments were not persistent nor pronounced, and the evidence of Alonzo's guilt was well-established.  The testimony at trial about the witness identifications centered on the night of the shooting. There were two witnesses who saw Quintin shoot Gauna.  No testifying witnesses identified Licho the night of the shooting as the person who shot Gauna, while there was ample evidence that Licho was, in fact, shooting the night of the murder.  These isolated remarks do not constitute prosecutorial misconduct and certainly do not warrant relief under *Brecht*.

### 3.    Alonzo Cannot Show A Fundamental Miscarriage of Justice.

-14-

This Court should not reach the issue of whether Alonzo meets the fundamental miscarriage of justice exception to the procedural default rule until it has addressed his other claims.   Alonzo may excuse the procedural default by showing that a constitutional violation "'probably resulted'" in a wrongful conviction.  *Haley*, 541 U.S. at 394 (citing *Carrier*, 477 U.S. at 496).  A federal court, however, faced with an allegation of actual innocence "must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default."  *Id.*

Additionally, Alonzo cannot show that he is actually innocent of his crimes.   To believe that Alonzo is in fact innocent, one must believe that the errors associated with the prosecutorial misconduct and related ineffectiveness of his counsel "probably" produced a wrongful conviction.   The Director addressed Alonzo's claims that he was actually innocent in his Answer and incorporates that response by reference here.  Answer at 13-16 (Part II).  The Director also notes, however, that Alonzo has not come into federal court with new, credible evidence establishing his innocence.   Priscilla Rodriguez's testimony does not exonerate Alonzo – it simply contradicts the testimony of the two state witnesses, Israel Martinez, the complainant's step-father who was close to the shooter, and Rosie Sanchez.  III RR 51–52, 132 (Martinez); 3 RR 94-96 (Sanchez).  At best, the jury would have heard conflicting accounts from the

defense eyewitnesses and consistent accounts from the State's eyewitnesses. Alonzo can only show a fundamental miscarriage of justice where he "persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In reviewing a claim of actual innocence advanced to overcome a procedural bar, a habeas court should "make a probabilistic determination about what reasonable, properly instructed jurors would do" with all the new evidence not presented at trial. *Id.* at 329. That Rodriguez had just been released from incarceration and that her testimony would have contradicted not only the testimony of the state's witnesses but also other defense witnesses surely would have made her testimony incredible. Also, that Alonzo gave a 38 caliber gun, a gun fitting the description of the murder weapon, the night of the shooting and gave it to a friend of his during the shooting completely undercuts Alonzo's claim of innocence. SHCR-01 [EventDate: 06/12/2006] at 8-9 (Hays's affidavit). Alonzo cannot show that he is actually innocent.

In short, Alonzo is not entitled to an evidentiary hearing because he has failed to excuse his default. The Supreme Court noted in *Keeney* that

> application of the cause-and-prejudice standard to excuse a state prisoner's failure to develop material facts in state court will appropriately accommodate concerns of finality, comity, judicial economy, and channeling the resolution of claims into the most

appropriate forum.

504 U.S. at 8.  These concerns are present in this case.

Alonzo had ample opportunity to investigate the leal bases of his claims before he filed his initial state writ.  He avers that he found Rodriguez' affidavit in his trial attorney's file, SHCR-01 at 60-62.  Satisfied with what he found, he filed his state application, then, apparently continued to investigate the facts, since five months later, Alonzo filed additional documents on July 20, 2006, *id.* [EventDate: 07/20/2006], too late to be considered by any state court.  Alonzo's investigation should have predated the filing of his first state-writ application.  Then, as indicated above, Alonzo failed to take advantage of his opportunity to raise his claims in the proper forum by failing to follow Judge O'Connor's lead and well-established pleading requirements.  Where a petitioner fails to investigate the factual and legal bases of his claims until after he has asked the proper forum for relief and then fails to make even a reasonable second attempt to raise his claims in the proper forum, "concerns of finality, comity, judicial economy, and channeling the resolution of claims into the most appropriate forum" cuts against not only against granting an evidentiary hearing but also addressing the merits of his defaulted claims.

**B.    Alonzo Is Not Entitled To An Evidentiary Hearing Addressing His Prosecutorial Misconduct and Related Ineffective Assistance of Counsel Claim Under Section 2254(e)(2).**

AEDPA limits the power of federal courts to order an evidentiary hearing. *Williams v. Taylor*, 529 U.S. 420, 420 (2000). Any lack of diligence on Alonzo's part means he must meet the mandates of section 2254(e)(2) before he is entitled to an evidentiary hearing. *See Williams*, 529 U.S. at 449-450 (comparing the cause and prejudice standard for overcoming a procedural default with the standards set out in 2254(e)(2) and noting that Congress "raised the bar" by requiring diligence); *see also Schriro v. Landrigan*, 550 U.S. 465, 479 & n.3 (2007) (noting that failure to comply with state's procedural rules requires petitioner to meet section 2254(e)(2)). A petitioner has been diligent when he has developed the factual basis of his claim in state court. *Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) (obtaining affidavits). If Alonzo meets this standard, the Court then has discretion whether to grant or deny a hearing. *See Schriro*, 550 U.S. at 468; *Clark v. Johnson*, 227 F.3d 273, 284-85 (5th Cir. 2000).

Section 2254(e)(2) prohibits an evidentiary hearing where a petitioner has failed to develop the factual basis for his claim unless:

> (A) the claim relies on
> > (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the

underlying offense.

28 U.S.C. § 2254(e)(2)(West 2009).

Alonzo has yet to explain what steps he took to uncover the factual basis of his *Napue* claim and related ineffective assistance of counsel claim. As indicated above, Alonzo filed Priscilla Rodriguez's affidavit in his initial application. SHCR-01 at 110-111. According to his application, her affidavit came out of his trial attorney's file. *Id.* at 61 (claiming that Exhibit H has variety of affidavits of potential witnesses but containing only one). Her affidavit, though, was dated February 11, 2006, eleven days prior to filing his first state-writ application. *Id.* at cover (filestamp), 111. Thus, it appears as if Alonzo waited until a few days prior to the filing of his state writ before he began looking for Priscilla Rodriguez, a search that apparently began almost three years to the day after Alonzo's conviction. The police report was obtained, then, and filed with the Court of Criminal Appeals on July 20, 2006 along with a many other investigative reports. *See* SHCR-02 (attachment 7). Alonzo notes that trying to obtain the records was "like pulling teeth," but he also notes that they were available as public records. *See id.* (p.2 of his "Submission of Evidence in Support of Pending Writ of Habeas Corpus" (the Submission). Alonzo must explain why he waited three years to begin searching for these records.

In addition to having failed to discuss the steps he took to investigate the

factual basis for his claims, Alonzo failed to develop his claims in state court. *See Dowthitt*, 230 F.3d 758.   The proper place to have raised his claims would have been in the state habeas trial court.   And while Alonzo claimed to have presented his late-filed evidence in the proper forum, the state habeas trial court said, "this Court has examined the Court's files . . . and finds no evidence that this Court ever received the supplemental claims which applicant sent to the Court of Criminal Appeals . . . ."   SHCR-04 at 127.   Alonzo was more than just "late."   *See id*.   Again, Alonzo waited until July 20, 2006 to substantiate his claim that Priscilla Rodriguez identified Licho Escamilla in a photo lineup on June 27, 2001.   *See* SHCR-02 at (attachment 7).   Then when he had the opportunity to properly present his claims in state court a second time, he failed justify his subsequent filing even though he knew that he had to explain why he could not have developed his claims in his initial application.   A federal court cannot grant an evidentiary hearing to a petitioner who has failed to develop the factual basis for his claim in state court.   *See Conner v. Quarterman*, 477 F.3d 287, 293 (5th Cir. 2007).

In addition to showing diligence, Alonzo must prove that the factual predicate could not have been discovered even if he had exercised all due

diligence. *See* 28 U.S.C. § 2254(e)(2)(A)(ii).[7]   The factual basis for his claims did not arise after his state-court proceedings; thus, Alonzo cannot meet the standards set out in section 2254(e)(2)(A)(ii).

Last, Alonzo cannot meet his burden under 2254(e)(2)(B), which requires a "convincing claim of innocence." *Williams*, 529 U.S. at 435.  As indicated above, the introduction of testimony simply contradicting the State's eyewitness testimony would not have exonerated Alonzo.  Alonzo cannot meet the mandates of section 2254(e)(2); thus, he is not entitled to an evidentiary hearing.

## II.   Alonzo Is Not Entitled To An Evidentiary Hearing On His Claim That His Trial Attorney Was Ineffective In Failing To Call Various Witnesses.

If Alonzo cannot overcome procedural default and justify the need for an evidentiary hearing under section 2254(e)(2), then the only remaining issue for the evidentiary hearing would be Alonzo's claim that Carl Hays was ineffective in failing to call several witnesses, one in particular, Priscilla Rodriguez.

---

[7] The Supreme Court in *Williams* noted the difference between the diligence required under 2254(e)(2)'s opening clause and the diligence mentioned in 2254(e)(2)(A)(ii).  529 U.S. at 435.  The Court said,

> Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend . . . upon whether the those efforts could have been successful.

*Id.*.  Section 2254(e)(2)A)(ii) applies where the "facts could not have been discovered, whether there was diligence or not," that is, where the "factual basis of the claims did not exist at the time of state-court proceedings." *Id.*

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *See Schriro*, 550 U.S. at 474. The deferential standards prescribed by section 2254(d) should be taken into account when a district court considers granting an evidentiary hearing, and if the "record refutes the applicant's factual allegations or otherwise precludes habeas relief," an evidentiary hearing is not required. *Id.*

As indicated in the Director's Answer, pages eighteen through twenty three, fully incorporated here by reference, this claim was fully adjudicated on the merits in state court, supported by the affidavit of Carl Hays, Alonzo's attorney. As best the Director can determine, Alonzo believes that Hays failed to investigate and call the following witnesses: Joe Martinez, Juan Lucio, Francisco Perez, Celese Nicole Gonzales, Priscilla Rodriquez, Sandra Cazares, Jaime Gonzalez, Juan Escamilla (Licho's brother), Jose Escamilla, Tony Tovar, Enrique Rojas, Vong Chounlamny, Jimmy Brown, Daniel Barron, and Loretta Kay Flores. Fed. Pet. at 8c.

At a minimum, Alonzo must provide reliable, credible proof that the uncalled witnesses were ready, willing, and able to testify on his behalf. *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (the petitioner must name the

witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense) (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)). As far as the Director can find, there are very few of the above-cited witnesses who provided affidavits stating that they were ready, willing and able to testify favorably on Alonzo's behalf.

First, Alonzo's claims that his attorney was ineffective for failing to call Martinez and Barron fails on its face because both testified.   V RR 112 (Martinez); V RR 22 (Barron).  Second, Alonzo has failed to show that all of the other above-cited witnesses were ready, willing and able to provide favorable testimony on the date of his trial.  While they may have had favorable testimony, they had to be available on the day of trial.  Rodriguez, of course, presented an affidavit.  SHCR-01 at 110-111.  Brown and Lucio provided affidavits after his state-writ application was submitted.  *Id.* [EventDate:07/20/2001].  Celeste Gonzales' and Jaime Gonzalez' affidavits were filed even later.  *Id.* [EventDate:01/26/2007].  The Director could not locate affidavits for Francisco Perez, Sandra Cazares, Juan Escamilla (Licho's brother), Jose Escamilla, Tony Tovar, Enrique Rojas, Vong Chounlamny, and Loretta Kay Flores; consequently, he cannot show that they were available to testify on his behalf the day of trial.

Third, to the extent that Alonzo relies on the affidavits of Brown, Lucio, Celeste Gonzalez and Jaime Gonzalez, his claim is procedurally defaulted, since the affidavits were late, his subsequent applications were dismissed as an abuse of the writ, and he has failed to excuse the default.

Rodriguez was the only witness who provided a timely affidavit and Alonzo's trial attorney provided ample explanation for why he did not call her — he could not find her. *See* SHCR-01 [EventDate: 06/12/2006) at 8. Moreover, Carl Hays explained his difficulty in finding witnesses in general. *Id.* at 7-8. According to Alonzo, Brown would have said that he was next door and saw a male run across the street and get into a Cadillac and begin shooting. SHCR-01 [EventDate:07/20/2006). Lucio would have said that he did not see Alonzo shooting. *Id.* Celeste Gonzales would have said that she saw someone who was not Alonzo shooting. *Id.* [EventDate: 01/26/2007). Last, Jaime Gonzalez would have said that she saw someone shooting from in side the Cadillac. *Id.* None of that testimony would have exonerated Alonzo.

In short, developing this testimony would not advance his claim that Carl Hays was ineffective. The issue in federal court is whether the state court's adjudication of the claim was an unreasonable application of *Strickland*. Based on the testimony he proposes to bring in the hearing, Alonzo can neither show that Hays was professionally deficient in calling these witnesses nor show that

the failure to call them prejudiced the defense.  This Court should not hold an evidentiary hearing where the record indicates that the state court's determination was not unreasonable.

## CONCLUSION

The Director respectfully requests that this Court dismiss with prejudice as procedurally defaulted Alonzo's claims that the prosecution committed misconduct by eliciting false testimony from a State's witness (ground one) and that his trial counsel was ineffective for failing to object to the alleged false testimony (ground five, subpart one).  The Director also request that this Court cancel the evidentiary hearing set for Wednesday, January 20, 2010 on the grounds that Alonzo is not entitled to a hearing addressing claims that are procedurally defaulted or on his one remaining claim, that trial counsel was ineffective in failing to call additional eyewitnesses at trial (ground five, subpart two).

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

ERIC J. R. NICHOLS
Deputy Attorney General
   for Criminal Justice

EDWARD L. MARSHALL
Chief, Postconviction Litigation Division


s/ Jon R. Meador
JON R. MEADOR
Assistant Attorney General
Postconviction Litigation Division
State Bar No. 24039051

P.O. Box 12548, Capitol Station
Austin, Texas  78711-2548
Telephone: (512) 936-1400
Telecopier: (512) 936-1280
Email: Jon.Meador@oag.state.tx.us

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF CONFERENCE

I, Jon R. Meador, Assistant Attorney General of Texas, do hereby certify that he conferred with William Reynolds Biggs on December 18, 2009, and he indicated his opposition to the motion.

s/   Jon R. Meador
JON R. MEADOR
Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that a copy of this pleading was electronically served on Petitioner's counsel on December 21, 2009.

William Reynolds Biggs
Federal Public Defender – Dallas
525 Griffin Street, Suite 629
Dallas, TX 75202
Email: william_biggs@fd.org

Richard Alan Anderson
Federal Public Defender–Dallas
525 Griffin Street, Suite 629
Dallas, TX 75202
Email: richard_anderson@fd.org

s/Jon R. Meador
JON R. MEADOR
Assistant Attorney General