**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **QUINTIN LEE ALONZO,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION 3:07-CV-399** |
| | § | |
| **RICK THALER,** | § | |
| **Director, Texas Department of** | § | |
| **Criminal Justice, Correctional** | § | |
| **Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## ORDER

Before the Court is the Recommendation of the United States Magistrate Judge filed on March 14, 2011 (ECF No. 84) in accordance with 28 U.S.C. § 636(b)(1), and Respondent's Objections thereto (ECF No. 87).  After reviewing all matters of record in this case *de novo*, the Court **ACCEPTS in part** the Findings, Conclusions, and Recommendation of the Magistrate Judge.

Petitioner Quintin Lee Alonzo ("Petitioner") filed his federal petition for a writ of habeas corpus on March 2, 2007, asserting five grounds for habeas relief.  *See* ECF No. 1.  The Magistrate Judge recommends granting Petitioner relief on the first ground, dismissing the second ground as procedurally barred, and denying Petitioner's remaining claims with prejudice.  *See* Findings, Conclusions, and Recommendation ("FCR") 47, ECF No. 84.  Respondent raises three objections to the Magistrate Judge's recommendation that the writ issue on the basis of Petitioner's prosecutorial misconduct claim: 1) the Magistrate Judge erred in holding an evidentiary hearing, and evidence from the hearing is not properly before the Court; 2) Petitioner's first ground for relief is procedurally defaulted and does not meet either exception to the procedural default rule; and 3) the

1

Magistrate Judge erred in holding the alleged prosecutorial misconduct material and prejudicial. *See* Respondent's Obj. 3-23, ECF No. 87.

## I.    FACTUAL BACKGROUND[1]

On July 16, 2001, Petitioner was indicted for murder in Cause No. F01-74583-HL, and on two counts of aggravated assault in Cause Nos. F01-74559-HL and F01-74561-HL.  *See* FCR 1, ECF No. 84. Before the start of trial, defense counsel told the court that he had filed an exculpatory evidence motion and had been promised that he could review Detective Berry's notebook.  *Id.* at 2. The prosecutor responded that the State had turned over all exculpatory evidence in its possession, and clarified that he would offer the detective's notebook in advance of the detective's expected testimony.  *Id.*  The prosecutor reiterated that he thought all exculpatory evidence had been turned over to counsel, stating that the review of the notebook therefore had nothing to do with defense counsel's motion.  *Id.*

At trial, the State presented evidence that on June 8, 2011, Israel and Cynthia Martinez, held a party at their home for their son Santos Guana ("the murder victim"), who had just graduated from high school and was entering the Marine Corps.  *Id.*  The party began at approximately 10:30 p.m. *Id.*  At approximately 11:30 p.m., with about 100 people in attendance, a fight broke out.  *Id.* According to Mr. Martinez, the victim's father, he and his son were escorting a person out of the front yard when the person threw a bottle towards their house.  *Id.*  Mr. Martinez pushed the person, who turned, pulled out a revolver, and began shooting towards the house.  *Id.*  Shots were also fired from a black car in the street.  *Id.*  Both the Martinezes and their son were shot.  *Id.*  Santos Guana

---

[1] The Court accepts and adopts the factual recitation as contained in the FCR.  *See* FCR 1-8, ECF No. 84. Given the Magistrate Judge's finding that both the "cause and prejudice" and "fundamental miscarriage of justice" exceptions excuse Petitioner's procedural default, however, the Court must lay out the relevant facts in detail.

later died from his wounds.

Ten days following the incident, the murder victim's father identified Petitioner as the shooter in a photographic lineup. *Id.* He also identified Petitioner in a video taken at the party, which was later admitted into evidence at Petitioner's trial. *Id.* On cross-examination, the father admitted that two days after the incident he told the Dallas Morning News that he hoped someone at the party would come forward with information leading to the shooter. *Id.* at 3. The victim's mother, Mrs. Martinez, testified at trial that she was inside the house around midnight on the night of the party when the fight started in the front yard. *Id.* She saw her son escorting people from the party, and then heard glass breaking and shooting. *Id.* She heard her son say he had been shot, and realized she had also been shot. *Id.* She did not see who shot her son. *Id.*

Rosie Sanchez also identified Petitioner as the murder victim's killer. *Id.* She testified at trial that she went to high school with the murder victim, and was present at the party. *Id.* She was sitting in the yard when she heard beer bottles breaking. *Id.* When she stood up to see what was happening, she heard gun shots and took cover. *Id.* She saw someone with a gun shooting, and identified Petitioner as that person in a photo lineup several weeks after the incident and, eventually, at trial. *Id.* Sanchez admitted that several people were shooting guns at the party. *Id.* at 3-4.

Detective Mike Berry was the lead detective in the case, and testified that he compiled a notebook consisting of his entire case file during his investigation. *Id.* Following the fatal shooting, approximately seventeen people from the party were taken to the police station and questioned. *Id.* Detective Berry testified that none of the seventeen identified Petitioner as the shooter, though some stated that he was at the party. *Id.* Licho Escamilla's ("Escamilla") name surfaced during the early part of Detective Berry's investigation. *Id.* With his brother's consent, the police searched

3

Escamilla's car, where they found a .38 caliber shell. *Id.* At that time, Escamilla's family informed Detective Berry that Escamilla had gone to Mexico. *Id.* When Detective Berry showed the murder victim's father a photo line-up containing pictures of Escamilla, the father failed to identify him. *Id.* In contrast, he immediately identified Petitioner as the person who shot him. *Id.* at 5. At trial, Detective Berry testified that while he believed Escamilla was shooting a gun at the party, there was no evidence that she shot the victims. *Id.* He further testified that no one identified Escamilla as the person who shot the murder victim, and that no one else had excluded Petitioner as the shooter. *Id.* at 7. He reiterated this testimony during cross-examination. *Id.*

Daniel Barron, the murder victim's cousin, testified that he saw someone wearing a white muscle shirt shooting towards the house from the street, and later saw that person drive off in a Cadillac. *Id.* at 5. While he testified that he did not see who shot his cousin, he later acknowledged that he had told Detective Berry after the party that the man in the white shirt shot his cousin before he drove off. *Id.* Barron maintained at trial that his statement to Detective Berry was incorrect, and that he did not see the man in the white shirt shooting until after his cousin had been shot. *Id.* at 6.

Four witnesses testified on behalf of Petitioner. Antonio Garza testified that he knew Petitioner prior to the incident, and had been invited to the party by Petitioner's friend Lucy Montoya. *Id.* Garza acknowledged on cross-examination that he was in Petitioner's house when Petitioner was arrested, but he denied telling Detective Berry at the time of Petitioner's arrest that he did not know where Petitioner was at the time of the shooting. *Id.* On re-direct, Detective Berry testified that he spoke to Garza on the day of Petitioner's arrest. *Id.* at 7. Detective Berry testified that Garza had told him that he did not know where Petitioner was at the time of the shooting, though he thought he was in the backyard. *Id.*

4

Lucy Montoya also testified that she was Petitioner's friend and had invited Petitioner to the party. *Id.* She testified that at one point people at the party began making gang signs and throwing bottles, so she walked away. *Id.* She testified that some guys wearing muscle shirts were saying "Ledbetter," which is where Escamilla is from. *Id.* She testified that she never saw Petitioner throw a beer bottle or make gang signs, and that he was with her when the shooting occurred. *Id.* Montoya also testified that Petitioner was wearing a "red and bluish" shirt on the night of the incident. *Id.*

Joe Martinez testified that he saw the murder victim trying to kick people out of the party, when he heard gunshots. *Id.* at 7. He fell to the ground at the sound of the shots. *Id.* When he looked out to the street, he saw two or three guys shooting to the fence, but Petitioner was not one of them. *Id.* Martinez knew Petitioner, though not well. *Id.* He had seen him earlier during the party, and did not know where he was at the time of the shooting. *Id.*

Petitioner's mother testified that she viewed the video shot during the party, and was able to identify her son. *Id.* She stated that her son was wearing a red and white checkered shirt. *Id.* Escamilla's girlfriend, Jessica Garcia, testified that Petitioner and Escamilla looked similar and had similar complexions at the time of the incident. *Id.*

At the close of the trial, the prosecutor emphasized Detective Berry's testimony that not one of the seventeen people interviewed by the police could come into the courtroom and tell the jury that Escamilla actually shot the victims, because none of them saw it happen. *Id.* at 7-8. He further stated that photo line-ups were shown to "lots" of people, but none of these people identified Escamilla as the person who shot the victims. *Id.* at 8. The prosecutor also said that "nobody identified [Escamilla] as shooting [the victim]. We know that. Nobody identified him as shooting him." *Id.*

5

The jury found Petitioner guilty of all three charges, and sentenced him to life in prison for the murder charge and fifteen years each for the aggravated assault charges, set to run concurrently. *Id.*

## II. PROCEDURAL BACKGROUND

Petitioner filed a direct appeal on all three charges, raising eight points of error. *Id.* The Fifth District Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *Id.* (citing *Alonzo v. State*, Nos. 05-03-00234-CR, 05-03-00235-CR, 05-03-00654 (Tex. App.–Dallas, July 26, 2004, pet. ref'd)). The Court of Criminal Appeals refused his petition for discretionary review on January 12, 2005. *Id.* On February 22, 2006, Petitioner filed state applications for writs of habeas corpus in all three cases. *Id.* He asserted four grounds for relief. *Id.* The Court of Criminal Appeals denied Petitioner's state applications without written order on February 7, 2007.

On March 2, 2007, Petitioner filed the instant petition for federal habeas relief. *See* ECF No. 1. Following Respondent's Response on August 22, 2007 (ECF No. 13) and Petitioner's subsequent Reply on September 17, 2007 (ECF No. 14), the Magistrate Judge stayed the petition to allow Petitioner to present his unexhausted claims in state court. *See* ECF No. 18. On April 16, 2009 Petitioner filed subsequent state writs in all three cases, asserting three additional grounds for relief: 1) prosecutorial misconduct through elicitation of false testimony; 2) ineffective assistance of counsel due to trial counsel's failure to object to false testimony; and 3) denial of due process because the trial court did not permit the defense to present evidence at trial regarding the guilt of a third party. *See* FCR 9, ECF No. 84. The Court of Criminal appeals denied these subsequent writs on August 5, 2009 as an abuse of the writ. *Id.*

On August 14, 2009, Petitioner filed a motion in this Court to reopen his federal habeas case.

6

*See* ECF No. 20.  The Court reopened this action on November 17, 2009.  *See* ECF No. 20.  Over

Respondent's objection, the Magistrate Judge held an evidentiary hearing on April 1, 2010.  *See*

ECF Nos. 63, 66.  Following additional submissions by the parties, the Magistrate Judge issued her

Findings, Conclusions, and Recommendation on March 14, 2011.  *See* ECF No. 84.  The Magistrate

Judge recommended granting Petitioner's petition on the basis of his prosecutorial misconduct

claim, finding that both the "cause and prejudice" and "fundamental miscarriage of justice"

exceptions excused his procedural default.  *See id.* at 47.  The Magistrate Judge recommended

dismissing Petitioner's second ground for relief as procedurally defaulted, and recommended

denying the remainder on the merits.  *Id.*  Respondent objects only to the Magistrate Judge's

recommendation that this Court grant Petitioner's writ on the basis of prosecutorial misconduct.  *See*

Respondent's Obj. 1, ECF No. 87.

## III.    LEGAL STANDARDS

Petitioner seeks issuance of the writ of habeas corpus on five grounds: 1) prosecutorial

misconduct through elicitation of false testimony; 2) the trial court violated his right to due process

by preventing him from presenting evidence that another person was actually guilty of the crimes

charged; 3) he is actually innocent of the murder; 4) the evidence is insufficient, if pretrial and newly

discovered evidence are considered; and 5) trial counsel provided ineffective assistance of counsel.

*See* FCR 9-10, ECF No. 84.  The Magistrate Judge recommended granting Petitioner's petition on

the basis of his first ground for relief, and denying or dismissing the remainder.  *See* FCR 47, ECF

No. 84.

Respondent objects to the Magistrate Judge's recommendation that the writ issue on three

grounds: 1) the Magistrate Judge improperly held an evidentiary hearing, and considered the

evidence adduced at such hearing, in violation of the 28 U.S.C. § 2254(e); 2) Petitioner's claim for

prosecutorial misconduct is procedurally barred, having been dismissed on independent and

adequate state law grounds under Texas's "abuse of the writ" doctrine, and Petitioner has failed to

meet either the "cause and prejudice" or "fundamental miscarriage of justice" exceptions to the

procedural bar; and 3) the Magistrate Judge erred in finding the prosecutorial misconduct material

and prejudicial on the merits. *See* Respondent's Obj. 1-2, ECF No. 87.

A.    AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to all federal

habeas corpus petitions filed after April 24, 1996 and governs Petitioner's application. *See Lindh*

*v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a state court shall not be granted with respect to any claim
> that was adjudicated on the merits in State court proceedings unless the adjudication
> of the claim –
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the Supreme
>> Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of
>> the facts in light of the evidence presented in the State court proceeding.

*Id.* at § 2254(d).  A decision is contrary to established federal law "if the state court arrives at a

conclusion opposite that reached by [the Supreme Court] on a question of law or if the state court

decides a case differently than [the Supreme Court] has on a set of materially indistinguishable

facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court unreasonably applies clearly

established federal law "if the state court identifies the correct governing legal principle from [the

Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's

case." *Id.* at 413.

8

B.    Procedural Bar

"'Texas's abuse of the writ doctrine is a valid state procedural bar foreclosing federal habeas review.'" *Moore v. Quarterman*, 534 F.3d 454, 463 (5th Cir. 2008) (quoting *Coleman v. Quarterman*, 456 F.3d 537, 542 (5th Cir. 2006), *cert. denied*, 549 U.S. 1343 (2007)). "The procedural default doctrine, like the abuse of writ doctrine, 'refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory development, and judicial decisions.'" *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (quoting *McCleskey v. Zant*, 499 U.S. 467, 489 (1991)). "[T]he doctrine has its roots in the general principle that federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." *Id.* (citing *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977)). While an independent and adequate state procedural disposition completely bars direct review of the judgment, "it provides only a strong prudential reason" to decline the exercise of jurisdiction on collateral attack. *Id.*

"The procedural default doctrine and its attendant 'cause and prejudice' standard are 'grounded in concerns of comity and federalism,' and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 730 (1991)) (internal citations omitted). "'[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.'" *Id.* (quoting *Coleman*, 501 U.S. at 732). As a result, "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

        1.     Cause and Prejudice Exception

      The Supreme Court has "not identified with precision exactly what constitutes 'cause' to excuse a procedural default." *Edwards*, 529 U.S. at 451. However, the Court has said that "'cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753. "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "For example, 'a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials . . . made compliance impracticable, would constitute cause under this standard.'" *Id.* (quoting *Carrier*, 477 U.S. at 488). "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Carrier*, 477 U.S. at 486. "[D]efault of a constitutional claim by counsel pursuant to a trial strategy or tactical decision would, absent extraordinary circumstances, bind the habeas petitioner even if he had not personally waived the claim." *Id.* at 485.

      "To show 'actual prejudice,' [a petitioner] must establish 'not merely that the error at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Moore*, 534 F.3d at 463 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1980)). A defaulted habeas petitioner must "convince [the court] that 'there is a reasonable probability' that the result of the trial would have been

10

different" absent the constitutional infirmity. *Strickler v. Green*, 527 U.S. 263, 289 (1999). "'[T]he adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" *Id.* at 289-90 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). "[T]he materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's verdict. Rather the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* at 290 (quoting *Kyles*, 514 U.S. at 435).

      2.      Fundamental Miscarriage of Justice Exception

"The cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice." *Banks*, 541 U.S. at 393. In *Murray v. Carrier*, the Supreme Court "recognized a narrow exception to the cause requirement where a constitutional violation has probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Id.* (quoting *Carrier*, 477 U.S. at 496). "To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, [the Supreme Court] explicitly tied the miscarriage of justice exception to the petitioner's innocence." *Schlup v. Delo*, 513 U.S. 298, 321 (1995). "'[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.'" *Id.* (quoting *Carrier*, 477 U.S. at 496).

11

"To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Id.* at 324. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.  The petitioner thus is required to make a stronger showing than needed to establish prejudice." *Id.* at 327.  Since the district court must "focus the inquiry on actual innocence . . . [i]n assessing the adequacy of petitioner's showing . . . the district court is not bound by the rules of admissibility that would govern at trial." *Id.*  Instead, "[t]he habeas court must make its determination concerning the petitioner's innocence 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial.'" *Id.* at 328 (quoting Henry J. Friendly, *Is Innocence Relevant? Collateral Attack on Criminal Judgments*, 38 U. CHI. L. REV. 142, 160 (1970)).

"Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329.

## IV.     ANALYSIS

Petitioner states five grounds for federal habeas relief: 1) prosecutorial misconduct through elicitation of false testimony; 2) the trial court violated his right to due process by preventing him from presenting evidence that another person was actually guilty of the crimes charged; 3) he is actually innocent of the murder; 4) the evidence is insufficient, if pretrial and newly discovered

evidence are considered; and 5) trial counsel provided ineffective assistance of counsel.  *See* FCR 9-10, ECF No. 84.  The Magistrate Judge recommended granting Petitioner's petition on the basis of his first ground for relief, and denying or dismissing the remainder.  *See* FCR 47, ECF No. 84. Preliminarily, the Court adopts and accepts the Magistrate Judge's recommendation to **DISMISS** the second ground as procedurally barred, and **DENY** Petitioner's third, fourth, and fifth grounds of relief with prejudice.[2]  Accordingly, the Court turns to Petitioner's allegation of prosecutorial misconduct, and the Magistrate Judge's finding that the claim met both the "cause and prejudice" and "fundamental miscarriage of justice" exceptions to procedural default.

Respondent objects to the Magistrate Judge's recommendation that the writ issue on three grounds: 1) the Magistrate Judge improperly held an evidentiary hearing, and considered the evidence adduced at such hearing, in violation of the 28 U.S.C. § 2254(e)(2); 2) Petitioner's claim for prosecutorial misconduct is procedurally barred, having been dismissed on independent and adequate state law grounds under Texas's "abuse of the writ" doctrine, and Petitioner has failed to meet either the "cause and prejudice" or "fundamental miscarriage of justice" exceptions to the procedural bar; and 3) the Magistrate Judge erred in finding the prosecutorial misconduct material and prejudicial on the merits.  *See* Respondent's Obj. 1-2, ECF No. 87.

---

[2]  The Magistrate Judge's analysis of Petitioner's claim for ineffective assistance of counsel relies, in part, on the finding that Detective Berry's report regarding his interview with Priscilla Rodriguez was not reasonably available for the purposes of the "cause and prejudice" exception to Petitioner's procedural default.  *See, e.g.* FCR 39, ECF No. 84.

As discussed *infra*, the Court finds that Petitioner has failed to prove either cause or prejudice for his procedural default.  Nonetheless the Court still adopts the findings of the Magistrate Judge regarding Petitioner's claims for ineffective assistance of counsel.  In particular, the Court notes that trial counsel gave ample reason for his decision not to interview or pursue Priscilla Rodriguez, stating that he did not find her credible and that she disagreed with other important defense witnesses regarding Petitioner's whereabouts during the shooting.  In addition, trial counsel testified that he attempted to secure Rodriguez's availability through a subpoena.  However, Rodriguez's grandmother and family prevented trial counsel from further investigating her claims and testimony.

Accordingly, the Court finds that defense counsel's strategic reasoning falls "within the wide range of reasonable assistance" contemplated by *Strickland*'s strong presumption that counsel acted effectively.  *Cf. Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The basis of Petitioner's prosecutorial misconduct claim is the State's alleged non-disclosure of impeachment information, specifically Detective Berry's report regarding his interview with Priscilla Rodriguez.[3]  Accordingly, Petitioner's claim implicates *Brady v. Maryland*.  373 U.S. 83 (1963).  "*Brady* . . . held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'"  *Banks*, 540 U.S. at 691. (citing *Brady*, 373 U.S. at 87).  The three essential components of a *Brady* claim are: "'[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'"  *Id.* (quoting *Strickler v. Green*, 527 U.S. 263, 281-82 (1999)).  "'Cause and prejudice' in this case 'parallel two of the three components of the alleged *Brady* violation itself.'"  *Id.* (quoting *Strickler*, 527 at 282).

"Corresponding to the second *Brady* component (evidence suppressed by the State), a

---

[3]  The Magistrate Judge found suppression based on the defense investigator's affirmative representation that Detective Berry's report was not in defense counsel's trial folder, and the prosecutor's inability to recall turning over the report.  *See* FCR 22-23, ECF No.84.  However, as noted by the Magistrate Judge, the report was "probably available" in the Detective's Notebook.  This is the appropriate standard for the purpose of determining whether the notebook was available to Petitioner.  It is undisputed that the prosecutor made Detective Berry's notebook to defense counsel prior to trial, in anticipation of Detective Berry's testimony.  *See id.* at 2.

In *Perry v. Quarterman*, an unpublished opinion from 2009, Chief Judge Jones dealt with a similar fact scenario and alleged *Brady* violation.  314 F. App'x 663, 670, No. 08-70017, 2009 WL 613172 (5th Cir. Mar. 11, 2009).  In *Perry*, the petitioner argued "that the prosecution suppressed a blood spatter" on one witness's shirt, "which would have impeached her testimony that she was not present during the murders."  *Id.* at 669.  Chief Judge Jones held that because "trial counsel had access to the necessary information, the prosecution had no duty to give further guidance as to what evidence may have been exculpatory."  *Id.* at 670 (citing *United States v. Mulderig*, 120 F.3d 534, 541 (5th Cir. 1997)).

In the instant case, it is undisputed that the prosecutor made Detective Berry's notebook available to defense counsel, and that the notebook more likely than not contained Detective Berry's report.  *See* FCR 2, 22, ECF No. 84.  The Magistrate Judge found that the evidence supports finding cause for Petitioner's default because "the report was not separately disclosed as exculpatory evidence."  *Id.* at 22.  However, as illustrated in *Perry*, the prosecutor had no responsibility to separately disclose the report, or to notify defense counsel regarding the substance and relevance of the report.  *Cf. Perry*, 314 F. App'x 663, 670.  By making the report available to defense counsel, the prosecutor discharged his obligations under *Brady*.  *Id.*  As such, the Court finds by a preponderance of the evidence that the prosecutor did not suppress Detective Berry's report for the purposes of *Brady*.

petitioner shows 'cause' when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence; coincident with the third *Brady* component (prejudice), prejudice within the compass of the 'cause and prejudice' requirement exists when the suppressed evidence is 'material' for *Brady* purposes." *Id.* (citing *Strickler*, 527 U.S. at 282). In the instant case, there is no debate that Detective Berry's report, which states that Priscilla Rodriguez told him that Escamilla was the shooter and that Petitioner did not commit the crime, would constitute evidence favorable to the accused. *Cf. Brady*, 373 U.S. at 87. Detective Berry's report impeaches his trial testimony that no witness ever implicated Escamilla, or expressly ruled out Petitioner as the shooter.

As noted above, however, Respondent also objects to the evidentiary hearing held by the Magistrate Judge, and the subsequent use of the evidence adduced at such hearing. Accordingly, "Section 2254(e)(2), the provision which controls whether petitioner may receive an evidentiary hearing in federal district court on the claims that were not developed in the [Texas] courts, becomes the central point of our analysis." *Williams v. Taylor*, 529 U.S. 420, 430 (2000). Section 2254(e)(2) provides as follows:

> If the application has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
> > (A) the claim relies on -
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). "By the terms of its opening clause the statute applies only to prisoners who

15

have 'failed to develop the factual basis of a claim in State court proceedings.'" *Williams*, 529 U.S. at 430 (quoting 28 U.S.C. § 2254(e)(2)). "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or prisoner's counsel." *Id.* at 432. "In *Keeney*, the Court borrowed the cause and prejudice standard applied to procedurally defaulted claims, deciding there was no reason 'to distinguish between failing to properly assert a federal claim in state court and failing in state court to properly develop such a claim.'" *Id.* at 433 (quoting *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8 (1992)). "[T]he opening clause of § 2254(e)(2) codifies *Keeney's* threshold standard of diligence." *Id.* at 434. Under *Keeney* and *Williams*, this Court must borrow the cause and prejudice standard applied to procedurally defaulted claims to determine diligence for the purposes of § 2254(e)(2). Accordingly, Respondent's first and third objections fold into the "cause and prejudice" analysis articulated *supra*.

A.    Cause

In *Williams v. Taylor*, the Supreme Court considered the level of diligence required of a petitioner to escape the stringent "clear and convincing evidence" requirement of § 2254(e)(2). In *Williams*, the petitioner alleged that the State had violated *Brady* by "failing to disclose a report of a confidential pretrial psychiatric examination of [the main prosecution witness]." *Id.* at 427. The district court granted an evidentiary hearing on the petitioner's other claims, but denied a hearing on the psychiatric report. *Id.* Before the hearing, the State filed for a writ of mandamus, claiming the hearing violated § 2254(e)(2) and seeking a stay. *Id.* at 428. The court of appeals granted the stay. On remand the district court vacated its prior order and dismissed the petition. The court of appeals affirmed.

16

The psychiatric report in *Williams* stated that the State's primary witness "had little recollection" of the murders "other than vague memories, as he was intoxicated with alcohol and marijuana at the time." *Id.* at 438. While the report had been prepared before petitioner's trial, it was not mentioned by petitioner until his federal habeas petition. *Id.* "Petitioner explained that an investigator for his federal habeas counsel discovered the report in [the witness's] court file but state habeas counsel had not seen it when he had reviewed the same file." *Id.* Petitioner's state habeas counsel averred that though he reviewed the court files of both petitioner and the witness he had "no recollection" of seeing the psychiatric report. *Id.* He further averred that "[g]iven the contents of the report" he was "confident" that he would remember it if it was in the file. *Id.* Despite the State's apparent non-disclosure of the report, which constituted relevant impeachment information under *Brady*, the Supreme Court nonetheless found that petitioner did not display sufficient diligence to escape the opening clause of 2254(e)(2). *Id.* The court found that repeated references to "psychiatric" and "mental health" reports in a transcript of the witness's sentencing proceeding, a copy of which state habeas counsel attached to the state habeas petition, "should have alerted counsel to a possible *Brady* claim." *Id.* The sentencing transcript "put petitioner's state habeas counsel on notice of the [psychiatric] report's existence and possible materiality." *Id.* at 439. While counsel requested "all reports of physical and mental examinations" from the State, the court found that "[g]iven knowledge of the report's existence and potential importance, a diligent attorney would have done more. Counsel's failure to investigate these references in anything but a cursory manner triggers the opening clause of 2254(e)(2)." *Id.* at 439-440.

Similarly, in this case both Petitioner's trial and state habeas counsel should have been on notice of the existence of Detective Berry's report. In her affidavit, Priscilla Rodriguez states that

she identified Escamilla as the shooter in a photo line-up shown to her by Detective Berry.  *See* FCR 23, ECF No. 84; *see also* Respondent's Obj. 5, ECF No. 87.  The Magistrate Judge concluded that such information did not "reflect the existence of an actual police report."  *Id.*  As the Supreme Court noted in *Williams*, however, the test is petitioner's diligence.  *Williams*, 529 U.S. at 434.  In *Williams*, Justice Thomas stated that references to a report in a sentencing transcript put the petitioner's counsel on notice of a possible *Brady* violation.

In this case, Priscilla Rodriguez's affidavit, which referenced an interview with Detective Berry and directly impeached his testimony, should have put Petitioner's trial counsel and state habeas counsel on notice of the possible existence of Detective Berry's report.  It is undisputed that state habeas counsel had access to Priscilla Rodriguez's affidavit at the time of Petitioner's first state habeas petition.  *See* Ex. H, Mem. Supp. Pet. Habeas Corpus, ECF No. 8-4.  There is no evidence that state habeas counsel took any steps, on the basis of Rodriguez's affidavit, to investigate either the substance of Rodriguez's testimony or a report corroborating the same.  More importantly, despite the prosecutor's alleged non-production of Detective Berry's report, Petitioner had access to the facts underlying his instant prosecutorial misconduct claim.  *Id.*  In her affidavit, Priscilla Rodriguez states that she was interviewed by Detective Berry, shown a photo-lineup, and identified Escamilla as the shooter.  *Id.*  The affidavit, filed in conjunction with Petitioner's first state habeas application, undercuts Petitioner's argument that the prosecution's alleged suppression of Detective Berry's report serves as a "cause" for his procedural default of his prosecutorial misconduct claim.

A Petitioner must also show diligence to prove suppression for the purposes of an alleged *Brady* violation.  *See United States v. Mulderig*, 120 F.3d at 540-41.  In *United States v. Mulderig*, the petitioner argued that the government violated *Brady* by suppressing material, exculpatory

evidence. *Id.* However, the government had given defense counsel access to hundreds of thousands of documents, including two documents containing the allegedly suppressed material. *Id.* at 541. Noting that "'[w]hen information is fully available to a defendant at the time of his trial and his only reason for not obtaining and presenting the evidence to the court is his lack of reasonable diligence, the defendant has no *Brady* claim,'" the Fifth Circuit held that there was no *Brady* violation. *Id.* (quoting *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990)). In this case, the prosecutor made available Detective Berry's notebook prior to trial, in anticipation of Detective Berry's testimony. *See* FCR 2, ECF No. 84. As the Magistrate Judge found, the notebook probably contained Detective Berry's report. *Id.* at 22. As such, the Magistrate Judge properly analyzed the availability of the report under the preponderance of the evidence standard. Such production by the State undercuts any alleged *Brady* violation on the part of the prosecutor, as the report was likely available to defense counsel at the time of trial with the exercise of minimal diligence.

For the same reasons, Petitioner does not satisfy the "cause" prong of the "cause and prejudice standard." "'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753. "For example, 'a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials . . . made compliance impracticable, would constitute cause under this standard.'" *Id.* (quoting *Carrier*, 477 U.S. at 488). On the basis of Rodriguez's affidavit alone, the factual basis for Petitioner's claim of prosecutorial misconduct through elicitation of false testimony was immediately and readily available. In *McCleskey v. Zant*, the Supreme Court explained that under *Carrier* the alleged external impediment must prevent counsel from constructing or raising a given claim. 499 U.S. 467, 497 (1991) (citing *Carrier*, 477

at 492).  "For cause to exist, the external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *Id.*  "Omission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim." *Id.* at 498.  In this case, the Court must take care not to conflate the production of Detective Berry's report, and Petitioner's ability to establish a claim for prosecutorial misconduct through elicitation of false testimony.  *Id.* Priscilla Rodriguez's affidavit provided sufficient evidence to impeach Detective Berry at trial, or raise a claim of prosecutorial misconduct in Petitioner's first state habeas proceeding.  The alleged non-disclosure of Detective Berry's report, therefore, did not prevent Petitioner from raising the claim.   Rather, such non-disclosure at most limited his access to evidence capable of further bolstering such claim.  Under *McCleskey*, the availability of a prosecutorial misconduct claim at the time of trial, even without disclosure of Detective Berry's report, bars Petitioner's claim of cause as a result of the State's alleged non-disclosure.  "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Carrier*, 477 U.S. at 486.

Defense counsel explained this apparent lack of diligence as a matter of trial strategy.  While he testified in front of the Magistrate Judge that he did not remember seeing Detective Berry's report, he also testified that if he had seen the report he would not have thought twice about it.  *See* FCR 11, ECF No. 84.  "The document would not have stuck out in his mind if he [had] seen it because he had talked to fifteen to twenty people about the shooting.  Some of them identified Escamilla as the shooter, but he did not view them as credible witnesses because their stories contradicted each other." *Id.*  Moreover, defense counsel "did not view [Priscilla Rodriguez] as a

particularly credible witness because her statement to the police placed petitioner in a different part of the party than other witnesses who testified for the defense, and she would have corroborated testimony from the State's witnesses that he was throwing bottles at the party." *Id.* at 12. "[D]efault of a constitutional claim by counsel pursuant to a trial strategy or tactical decision would, absent extraordinary circumstances, bind the habeas petitioner even if he had not personally waived the claim." *Carrier*, 477 U.S. at 485.

The factual and legal basis for petitioner's prosecutorial misconduct claim was reasonably available, with minimal diligence, even if the State failed to produce Detective Berry's report. Defense counsel, however, did not investigate the matter because he did not find Rodriguez credible, and because she contradicted other key defense witnesses. Accordingly, the Court finds that Petitioner does not meet the requirements of § 2254(e)(2), nor does he meet the "cause" portion of the "cause and prejudice" test required to overcome his procedural default.

B.    Prejudice

"The habeas petitioner must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Carrier*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  Petitioner must show that "'there is a reasonable probability'" that the result of his trial would have been different if Detective Berry's report had been disclosed before trial.  *Strickler*, 527 U.S. at 289.  As such, this Court must consider whether the impeachment information "'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"  *Id.* at 290 (quoting *Kyles*, 514 U.S. at 435).

"[C]oincident with the third *Brady* component (prejudice), prejudice within the compass of

21

the 'cause and prejudice' requirement exists when the suppressed evidence is 'material' for *Brady* purposes." *Banks*, 540 U.S. at 691  (citing *Strickler*, 527 U.S. at 282).  "Unless suppressed evidence is 'material for *Brady* purposes, [its] suppression [does] not give rise to sufficient prejudice to overcome [a] procedural default." *Id.* at 698 (quoting *Strickler*, 527 U.S. at 282).  "[T]he materiality standard for *Brady* claims is met when 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* (quoting *Kyles*, 514 U.S. at 435).  The Magistrate Judge concluded that because the testimony of each witness was challenged or subject to challenge, Detective Berry's testimony as "an apparently neutral and reliable witness . . . bolstered the testimony of [the State's] two identification witnesses." *See* FCR 31, ECF No. 84.

Detective Berry testified that no witness identified Escamilla as the shooter, or ruled out Petitioner as the shooter.  This testimony was repeated multiple times by the prosecutor in his closing argument.  Nonetheless, it is clear from a review of the record that Detective Berry's testimony was not determinative of Petitioner's guilt or innocence.  The Magistrate Judge concluded that "the false testimony could have, in any reasonable likelihood, affected the judgment of the jury." *See* FCR 32, ECF No. 84.  While the Court agrees that it is *possible* that the false testimony would have altered the conclusions of the jury, the Court does not find it *probable* that impeachment of Detective Berry would alter the verdict.  The additional evidence, clarifying that one person identified Escamilla to Detective Berry following the murder, does not put the entire case "in a different light."  Rather, the extant evidence would still constitute conflicting and confused reports and identifications from the night in question, with substantial and powerful evidence that Petitioner shot the three victims.  Moreover, even assuming the partial impeachment of Detective Berry's

testimony, the evidence still would have shown that several witnesses identified Petitioner in photo-lineups following the incident, and repeated those identifications in open court.

The Fifth Circuit considered a similar circumstance in *Dickson v. Quarterman*, and found that the impeachment evidence in the context of the evidence presented at trial was insufficient to prove materiality under *Brady*.   462 F.3d 470 (5th Cir. 2006).   In *Dickson*, two of the State's witnesses during a murder trial, Medina and Brown, testified that the defendant had expressed an intent to shoot the store owners prior to the initiation of a robbery.  *Id.* at 473.  Following the defendant's conviction, the State revealed suppressed audiotapes of pretrial interviews with Brown. *Id.*  The transcript of the interviews showed that Brown questioned the accuracy of his prior written statement, and expressed doubt regarding his prior factual assertions.  *Id.*  Despite the State's clear suppression of exculpatory impeachment information, the Fifth Circuit held that the evidence was not material and therefore did not meet the prejudice prong of the "cause and prejudice" test.  *Id.* 478-79.  The *Dickson* court held that even if the testimony of Brown was impeached, the petitioner's argument that such impeachment would have altered the course of the trial was "speculative" and therefore "insufficient" to justify collateral review in the face of a procedural bar.  *Id.* at 478.

Accordingly, the Court finds that the suppressed evidence is not "material" for the purposes of *Brady* because it does not put the case in a different light and does not raise a reasonable probability that the case would have resulted in a different verdict.  As such, Petitioner has also failed to establish the "prejudice" prong of the "cause and prejudice" test for overcoming procedural default.

 C. <u>Fundamental Miscarriage of Justice</u>

Under *Carrier*, Petitioner must "show that 'a constitutional violation has *probably resulted*

in the conviction of one who is *actually innocent*" to satisfy the "fundamental miscarriage of justice" exception to procedural default. *Schlup*, 513 U.S. at 327 (quoting *Carrier*, 477 U.S. at 496). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* "*Carrier* requires a petitioner to show that he is 'actually innocent.'" *Id.* "Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find [the petitioner] guilty beyond a reasonable doubt." *Id.* at 329. "'[F]or the most part, victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard.'" *Dretke*, 541 U.S. at 394 (quoting *Carrier*, 477 U.S. at 495-96). The Supreme Court has stated that this exception must be reserved for the "rare" or "extraordinary case." *Schlup*, 513 U.S. at 321.

The Magistrate Judge found that given "problematic" identification evidence, impeachment of Detective Berry would make it more likely than not that a reasonable juror would have reasonable doubt. *See* FCR 28, ECF No. 84. Preliminarily, Respondent objects that the Magistrate Judge relied on evidence adduced at the evidentiary hearing, which the Respondent objects was held in derogation of §2254(e)(2). As explained *supra*, the Court finds that an evidentiary hearing was not appropriate in this action for the same reasons that Petitioner failed to meet the "cause and prejudice" test. Even considering all of the evidence presented at the evidentiary hearing, however, the Court still finds that Petitioner has failed to meet the extraordinary burden of proving  that he is more likely than not actually innocent of the crimes alleged.

Several witnesses identified Petitioner as the shooter immediately following the incident and during the trial. The victim's father, who was only five feet away from the shooter at the time of

the fatal shooting, identified Petitioner in a photo-lineup immediately following the incident.  Mr. Martinez had an excellent view of the incident, did not know Petitioner prior to the shooting, and consistently identified Petitioner as his son's killer.  Rosie Sanchez identified Petitioner as the shooter in a photo lineup following the incident and at trial.  Given this extensive identification evidence, and the conflicting motives and recollections of the defense witnesses, the Court cannot find that it is more likely than not no reasonable juror would find Petitioner guilty beyond a reasonable doubt.

## V.  CONCLUSION[4]

After reviewing all relevant matters of record in this case, including the Findings, Conclusions, and Recommendation of the United States Magistrate Judge (ECF No. 84) and Defendants' Objections thereto (ECF No. 87), the Findings, Conclusions, and Recommendation of the Magistrate Judge is **ACCEPTED** in part.   The Court adopts and accepts the Magistrate Judge's recommendation to **DISMISS** with prejudice Petitioner's second ground for relief as procedurally

---

[4] As noted *supra*, the procedural default doctrine is grounded in "considerations of comity and concerns for the orderly administration of criminal justice."  *Dretke*, 541 U.S. at 392-93.  The high bar a petitioner must satisfy in order to overcome a procedural default represents the importance of federalism in our constitutional system.  Despite the Court's conclusion that Petitioner failed to meet the high bar required to overcome his procedural default, the Court must pause to express concern regarding the State's elicitation of false testimony, and the State's emphasis on such testimony during closing.

"[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Mooney v. Holhan*, 294 U.S. 103, 112 (1935)).  "The duty of a prosecutor, as the representative of the sovereign in a criminal case, is 'not that it shall win a case, but that justice shall be done.'" *Dickson v. Quarterman*, 462 F.3d 470, 479 (5th Cir. 2006) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).  "'Unless, indeed, the adversary system of prosecution is to descend to a gladiatorial level unmitigated by any prosecutorial obligation for the sake of truth, the government simply cannot avoid responsibility for knowing when' disclosure is required." *Id.* (quoting *Kyles*, 514 U.S. at 439).

In this case, the prosecutor elicited and highlighted false testimony.  Regardless of intent, the prosecutor acts for the State and bears "the mantle of public trust." *Id.*  Failure to act in accordance with these high standards undercuts the very basis of our system and implicates "the preservation of our civil liberties." *Id.*  In spite of the instant ruling, the Court emphasizes that the prosecutor's "conduct 'should attract no judicial approbation.'" *Id.* (quoting *Banks*, 540 U.S. at 696).

barred, and to **DENY** Petitioner's third, fourth and fifth grounds of relief with prejudice.  The Court however, declines to adopt and accept the Magistrate Judge's recommendation that the Court grant Petitioner relief on his first ground of relief for prosecutorial misconduct and **DISMISSES** with prejudice Petitioner's first ground for relief, finding the claim both procedurally barred and unsuccessful on the merits.  By separate judgment, the Court formally denies Petitioner's application for a writ of habeas corpus.

       **SO ORDERED** on this **12th** day of **August, 2011**.


_____
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**