```
 1                    UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF TEXAS
 2                          DALLAS DIVISION

 3  QUINTIN LEE ALONZO              *    NO. 3:07-cv-399-O
                                     *
 4       Petitioner,                 *
                                     *
 5            vs.                    *
                                     *
 6  NATHANIEL QUARTERMAN, et al,    *
                                     *
 7       Respondents                 *    Dallas, Texas
                                     *    March 29, 2010
 8

 9
                            STATUS CONFERENCE
10                     BEFORE HON. IRMA RAMIREZ
                             U. S. MAGISTRATE
11                        (Corrected Transcript)

12  APPEARANCES:

13  For Petitioner:              MR. RICHARD ALAN ANDERSON
                                 Federal Public Defender-Dallas
14                               525 Griffin St., Ste. 629
                                 Dallas, TX 75202
15                               214-767-2746

16  For Respondents:             MR. JON R. MEADOR
                                 Office of Texas Attorney
17                               General
                                 300 W. 15th St.
18                               Austin, TX 78701
                                 512-936-1400
19
    Court Transcriber:           MS. BETTY TATE
20                               3101 Townbluff Dr., #923
                                 Plano, Texas 75075
21                               972-596-9442

22

23
    Proceedings recorded by electronic sound recording;
24
    transcript produced by transcription service.
25
```

**P-R-O-C-E-E-D-I-N-G-S**

**THE COURT:** Good afternoon. We are on the record in Alonzo vs. Thaler, 3:07-cv-3990. Who do I have on the telephone with me, please?

**MR. MEADOW:** For respondent you have John Meadow and –

**MS. KUYKENDAL:** Leslie Kuykendal

**MR. BIGGS:** For petitioner you have William Biggs and Richardson Anderson.

**THE COURT:** All right. Mr. Meadow, it's my understanding that you requested this telephone conference for purposes of clarifying issues to be heard at the evidentiary hearing on Thursday; is that right?

**MR. MEADOW:** That's right, Your Honor. Mr. Biggs had subpoenaed the DNA file from the State, the DA's Office, and in speaking with him I understand that his purpose for sort of the broad subpoena was he has done this under the understanding that we were going to also go into the excuses for the default and sort of the procedural aspects of the claims, in addition to the substantive aspects of the claim, and the subsequent order didn't say as much but I just wanted to clarify that that's one of the things - some of the things we're going to talk about at the hearing, in addition to the substantive of those three

1 claims.

2 We are also going to talk about the procedural
3 posturing; is that correct?

4 **THE COURT:** That is correct, and I anticipated
5 that that might be why you were asking for the hearing
6 because I went back and looked at my March 17th order and it
7 does address only the substantive issues on the merits and
8 not – not the procedural issue but I think they are entitled
9 to present some evidence regarding the procedural default
10 and why they can overcome it, so to the extent that I need
11 to amend my order, I can do that.

12 **MR. MEADOW:** Okay. No, I just really wanted to
13 get some clarification on it, so yeah, and I have even
14 spoken with William, and that's sort of the direction he
15 wanted to go in.

16 We had also filed some – and I talked to William
17 about this too, sort of some stipulations in reference to
18 the first two issues, the first issue being the
19 prosecutorial on this conduct, the prosecutorial error
20 claim, the second one being the related IAC claim.

21 We had conceded, based on our sort of research in
22 this case and some discovery we had gotten from the DA's
23 office, that the question regarding whether the state or the
24 police had ever discovered any evidence that anyone else
25 other than Quintin Alonzo had been the shooter, we

1 acknowledge that's not correct, and obviously the police
2 department had taken an affidavit or had a police report
3 from a Pricilla Rodriguez saying she saw Flecho Escambia
4 shoot Santos Ghana, so we had been willing - and I talked to
5 William about it - willing to stipulate to some factual
6 issues, making it seem like the first two issues, the
7 factual issues, were sort of off the table.  I don't know if
8 William wants to address that or not, but we were just
9 wondering if we might be able to also limit the scope of the
10 hearing maybe just to procedural default in the first couple
11 of claims and then the substantive issue of the third claim
12 –

13     **THE COURT:**  I'm happy to accept any stipulations
14 by the parties.  I can tell you that I – there was nothing
15 before me that set out that stipulation.  I think you may
16 have put that in the objections to my order denying the
17 motion to cancel the evidentiary hearing, but those
18 objections go to the District Judge, they're not before me.

19     **MR. MEADOW:**  Right, okay.

20     **THE COURT:**  So if you both want to enter into a
21 stipulation that will reduce the number of witnesses or the
22 facts that need to be established at trial then all you need
23 to do is present an agreed stipulation.

24     **MR. MEADOW:**  Your Honor, we would oppose any sort
25 of limitation on the evidentiary hearing.  We feel like even

1  with the concession of knowingly putting on false testimony
2  that there's still some fact issues that need to be resolved
3  with regard to all three claims, and we wouldn't want to
4  limit the scope of the hearing in that way, even if we were
5  to make a stipulation.  The Government – I mean as I see it,
6  the Government has made a concession.  We haven't developed
7  formally any kind of factual stipulation at this time, but
8  even if we did I think that it's not going to resolve some
9  of these key issues to each of the claims.
10         **THE COURT:**  Well, I understand that they're not
11 going to stipulate to everything, but even if they do
12 stipulate to some facts, I think that will help expedite the
13 record, so if it's one witness that's going to stipulate –
14 or in other words, if it saves one witness – I understand
15 it's not going to resolve the entire issue but it may save
16 us from having to hear from one or two witnesses if they're
17 willing to stipulate, and I'll let you both talk about what
18 the stipulations or what the extent of the stipulations are.
19 I certainly am not going to preclude you from putting on any
20 evidence on any factual issues that have not been stipulated
21 to but I think stipulations could help narrow the hearing.
22 Is that clear as mud?
23         **MR. MEADOW:**  No, it's clearer than mud.
24         **THE COURT:**  Okay.  That's a resounding –
25         **MR. MEADOW:**  I understand.  I think we can –

1  we'll work on it between us and come Thursday morning we'll
2  maybe go on the record the first thing and talk about what
3  sort of agreement we came to.
4      **THE COURT:**  Okay, and putting it on the record is
5  fine too.  It doesn't have to be written, just as long as we
6  have it on the record, but if they're willing to stipulate
7  that certain witnesses will testify to certain facts, then
8  that might also save the Government some money in having to
9  serve the subpoenas, or having to pay those witnesses to
10 come downtown.
11     **MR. MEADOW:**  One witness in particular William
12 and I have said that we're not going to call, the witness
13 from Tennessee and that was Rick Berry.  Again, his
14 testimony is on the record and it's hard to dispute what's
15 on the record, given what we know about it, but he and I can
16 talk more about that.
17     **THE COURT:**  Okay.
18     **MR. MEADOW:**  And I guess the third issue was just
19 something I had written down.  Was this sort of getting Mr.
20 Alonzo over to the courthouse?
21     **THE COURT:**  Uh-huh.
22     **MR. MEADOW:**  I called TDCJ and they said that
23 they had – as far as they were concerned they had given –
24 they had turned over custody of Quinton Longgood to the
25 Federal Marshal.  I didn't know if he was in Dallas County

1  Jail or at the Federal facility, and if so how would we get
2  him over to the court on Thursday?
3       **THE COURT:**  I think he's been writ'd over, hasn't
4  he?
5       **MR. MEADOW:**  Well, the writ was issued in care of
6  TDCJ, the Abilene warden.  He's been in Dallas, and I'm not
7  sure where, I think for the last four to six months, I
8  think.
9       **UNIDENTIFIED SPEAKER:**  Judge, that's correct.
10  He's been at Lew Sterrett for the past four months.
11       **THE COURT:**  Well, we'll either – if he's in
12  Federal custody then we'll do an order to produce him, and
13  if he is in the County's custody we can still do a writ for
14  that.
15       **MR. MEADOW:**  Okay.  I just want to make sure he
16  shows up.
17       **THE COURT:**  Well, I think it would be appropriate
18  to have him here.
19       **MR. MEADOR:**  Is there something we need to do on
20  that front then?
21       **THE COURT:**  I don't think so.  We'll handle it
22  from our end.  We are on the record, by the way.  Since I
23  wasn't sure exactly what we would be covering and to what
24  extent it might need to be recorded, we are officially on
25  the record, and this conference is – it will be recorded on

```
 1  the docket, but my CRD is sitting in and she's looking right
 2  now to see where he is and what we need to do.
 3              MR. MEADOW:  Okay, thank you very much.
 4              MR. ANDERSON:  I think that's all from our end,
 5  Your Honor.
 6              THE COURT:  Okay.  Mr. Biggs?
 7              MR. BIGGS:  Nothing from the petitioner.
 8              THE COURT:  And if you'll give me just a second
 9  to confer with her to see if there's anything we need to do.
10              All right, my CRD has information to provide us
11  on getting Mr. Alonzo here.
12              COURTROOM DEPUTY:  (Inaudible).
13              THE COURT:  All right, anything else?
14              MR. MEADOW:  Not from respondent, Your Honor.
15              THE COURT:  Okay.  I think we've got the third
16  item taken care of then.  Stipulation, the second item, will
17  be up to you guys, and I'll just hear any stipulations on
18  Thursday on the record, unless you wish to submit something
19  in writing, and I will issue an amended order that
20  specifically broadens the scope of the hearing to include
21  the procedural default issue.
22              All right, thank you very much, and I will see
23  you both on Thursday, or all of you on Thursday.
24              MR. MEADOW:  Thank you, Your Honor.
25              MR. ANDERSON:  Thank you, Your Honor.
```

1

2                                       (Hearing Concluded)

3

4

5  I, Betty Tate, certify that the foregoing is a correct

6  transcript from the electronic sound recording of the

7  proceedings in the above-entitled matter.

8

9  Date:   October 18, 2011        s/ Betty Tate_____

10                                  Betty Tate
                                    Transcriber
11                                  3101 Townbluff #923
                                    Plano, TX   75075
12                                  972-596-9442

13

14

15

16

17

18

19

20

21

22

23

24

25