**ORIGINAL**

CIVIL ACTION No. 3:07-CV-399

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**
DEC 17 2013
CLERK, U.S. DISTRICT COURT
By _____ Deputy

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

QUINTEN LEE ALONZO
PETITIONER-MOVANT

VS

RESPONDENT
WILLIAM STEPHENS, DIRECTOR

---

**60(b) MOTION
TO REOPEN HABEAS CASE**

---

PRO SE

Quinten Lee Alonzo
Robertson Unit # 1158688
12071    FM    3522
Abilene, TX. 79601

12.16.13

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

QUINTEN LEE ALONZO,  §
    PETITIONER,  §
       -MOVANT,  §
VS.  §    CIVIL ACTION
  §    No. 3:07-CV-399
  §
WILLIAM STEPHENS, DIRECTOR,
    RESPONDENT.  §

## 60(b) MOTION
## TO REOPEN HABEAS CASE

TO THE HONORABLE REED O'CONNER:
UNITED STATES DISTRICT COURT JUDGE.

    COMES NOW, the above named petitioner-movant, acting in his own behalf, respectfully filing this motion to reopen his 28 U.S.C. § 2254 petition due to recent Supreme Court precedent.

    IN SUPPORT THEREOF petitioner-movant would show the Court:

### I
### JURISDICTION

    THIS COURT'S JURISDICTION is invoked pursuant to Rule 60(b), FRCP: Gonzalez-v-Crosby, 545 U.S. 524, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005); accord Ruiz-v-Quaterman, 504 F.3d 523 (5th Cir. 2007, and, Ochoa-v-Quarterman, 507 F.3d 884 (5th Cir. 2007), with In Re Abdur' Raham, 392 F.3d 174 (6th Cir. 2004) [United States District Court should recognize a 60(b) request due to it not attacking the judgement of conviction but rather the procedural ruling].

### II
### CHRONOLOGY OF FILINGS

1. On February 7, 2003, petitioner-movant was convicted by jury of First Degree murder, and two aggravated assaults with a deadly weapon in causes numbers

-1-

F-01-74583-L, F-01-74561-L, and F-01-74559-L, out of the Dallas County Criminal Court Number Five of Dallas, Texas;

2. An appeal was perfected to the Fifth Court of Appeals in No.s 05-03-00234-CR, 05-03-00235-CR, and 05-03-00654-CR, and was affirmed on July 26, 2004. A (PDR) petition for discretionary review was sought to the Texas Court of Criminal Appeals in PD-1306-04, PD-1307-04, and PD-1308-04, but was refused on 01.12.05;

3. Petitioner-movant hired an attorney to file applications for the writ of habeas corpus. The retained attorney did and then removed himself from any further involvememnt. While the three applications were pending in the trial court and prior to any notice that said applications had been transmitted on up to the Texas Court of Criminal Appeals, petitioner-movant filed an ADDENDUM to the attorney's applications, as well as, other filings thereafter to the Texas Court of Criminal Appeals. The Court of Criminal Appeals assigned numbers W-64,739-01, WR-64,739-02, and WR-64,739-03. But unbeknowns to petitioner-movant the Court of Criminal Appeals did not entertain any of petitioner-movant's pro se filings, though the Court did subsequently acknowledge havigg received them. Nonetheless, said applications were denied without written order on February 7, 2007;

4. Petitioner-movant timely filed his 28 U.S.C. § 2254 petition into the United States District Court. After the respondent's Answer and claim of non-exhaustion the assignaed Magistrate Judge found that petitioner-movant's claims of Prosecutorial Misconduct from eliciting and highlighting false testimony, and Counsel's Ineffectiveness for failing to have discovered and/or Objected to the eliciting and highlighting of false tetsimony merited the opportunity for the State of Texas to review the claims and thus, petitioner-movant was allowed to return to the state level and relitigate said claims. The Magistrate stayed and abeyed the § 2254 petition with direction to petitioner to re-file within 30-days of the state level decision(s). Petitioner-movant did file a subsequent application(s) for the writ of habeas corpus on the state level, presenting said claims as well as a claim of innocence to gain a gateway for his two claims. The subsequent habeas applications were assigned No.s WR-64,739-04, WR-64, 739-05, and WR-64,739-06. Said state habeas applications were filed April 16, 2009, and subsequently dismissed August 5, 2009.;

5. Petitioner-movant again timely filed his motion to reopen the stayed district court petition. The Magistrate Judge appointed the Federal Public Defenders who subsequently battled the Texas Attorney General to keep the reopened claims before the Court. After multiple filings by both parties the Magistrate Ordered a fullfledged evidentiary hearing. In which multiple witbnesses were called and

examined-crossexamined. In which the Magistrate entered detailed findings of fact and conclusions of law recognizing the false testimony of the lead detective Berry on critical and material matters regarding whether petitioner-movant was ḳthe shooter, or was it Licho Escamilla. Even as much of the State's evidence indicated. As well as, whether applicant's alibi was advanced; and whether defense counsel was ineffective for failing to discover and/or utilize Detective Berry's Supplemental Police Report that stated Priscilla Rodriquez picked Escamilla out of a photo line-up as the shooter while recognizing petitioner-movant as not being involved; and whether trial counsel was ineffective for failing to object to the false testimony and failing to object to the prosecutor highlighting said false testimony during his closing statements.

The Magistrate concluded that the false testimony was ᴋ𝕏ᴋ both elicited and highlighted by the prosecutor during the guilt/innocence stage. Noting that said detective testigfied three times falsely, and the prosecutor did likewise in his closing statements.

Thereafter, the Magistrate held that as a matter of law petitioner-movant met both the "cause and prejudice", and the "fundamental miscarriage of justice exceptions to the procedural bar. Recommending the first claim of prosecutorial misconduct be granted but the second claim of trial counsel being ineffective for failing to discover and/or utilize the Supplemental Police report, as well as object to the false tetsimony was procedurally defaulted from failure to exhaust. Recommending it be dismissed.

6. The Honorable Reed O'Connor reversed the Magistrate's recomendation, finding the porsecutorial misconduct claim to be procedurally barred. Accepting that the second claim of ineffective assistance of counsel is procedurally barred, and further accepting the denial of grounds three, four and five. The Court issued it's Order August 12, 2011;

7. The Public Defender filed notice of appeal with request for certificate of appealability. The district court denied the request and the case proceeded to the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit assigned No. 11-10848. The request for COA was timely filed, as well as, a Supplemental Brief in support, in light of a Supreme Court decision issued March 20, 2012, to wit, **Martinez-v-Ryan**, (No. 10-1001), 566 U.S. 1, 2012 U.S. LEXIS 2317. The **Martinez-v-Ryan**, supra, case had been pending during this Court's consideration of the defaḥlted claims. The Fifth Circuit Court of Appeals granted the Supplemental brief but in the same ruling denied the request for certificate of appealability.

The Court denied the COA on July 17, 2012;

8. The Public defender filed writ of certiorari to the Supreme Court on 10.04.12. The Supreme Court assigned number 12-6621. The Respondent's filed their brief in opposition to the petition for writ of certiorari, and the Public Defender filed a Reply on March 8, 2013. The Supreme Court denied the petition on March 18, 2013. Just 73-days prior to their landmark decision of Trevino-v-Thaler, No. 11-10189, on May 28, 2013, in which the Supreme Court fully applied their Martinez-v-Ryan, supra decision to the State of Texas.

Nonetheless, petitioner-movant fell through the legal cracks, even though Ibarra-v-Thaler, 2012 WL 3537826 (5th Cir. Aug. 17, 2012 [see also 687 F.3d 222, 224-228], and, Balentine-v-Thaler, 2012 WL 3570766 (5th Cir. Aug.21, 2012), are pending correction in light of the Trevino-v-Thaler, supra, decision.

### III
### ISSUE AT BAR

TO REOPEN AND REVIEW THE PROCEDURALLY BARRED CLAIMS DUE TO A NEW RULE OF LAW AND EXCEPTION TO THE PROCEDURAL DEFAULT NOT PREVIOUSLY AVAILABLE BUT RECENTLY PROVIDED BY THE SUPREME COURT IN TREVINO_V_THALER, No. 11-10189, May 28, 2013).

This Honorable Court entered it's Order denying/dismissing petitioner-movant's habeas claims on August 12, 2011. The Court agreed with the Respondent's three objections [1] the Magistrate Judge erred in holding an evidentiary hearing, and evdience from the hearing is not properly before the Court; [2] Petitioner is procedurally defaulted and does not meet either exception to the procedural default rule; and [3] the Magistrate Judge erred in holding the alleged prosecutorial misconduct was material and prejudicial. See Respondent's Objections, 3-23, FCF No. 87.

Petitioner-movant will quote in significant part this Court's Order in Alonzo-v-Thaler, No. 3:07-CV-00399-O, document 90, on August 12, 2011, **i.e.** [page 1]

"Before the Court is the Recommendation of the United States Magistrate Judge filed March 14, 2011 (ECF No. 84) . . . After reviewing all matters of record in this case de novo, the Court ACCEPTS in part the Findings, Conclusions, and Recommendation of the Magistrate Judge."

"... the Magistrate Judge recommends granting Petitioner relief on the

-4-

"first ground, dismissing the second as procedurally barred, and denying Petitioner's remaining claims with prejudice. See Findings, Conclusions, and Recommendation [FCR] 47, ECF No. 84. Respondent raised three objections to the Magistrate Judge's recommendation that the writ issue on the basis of Petitioner's prosecutorial misconduct claim...".

[page 2]

"I FACTUAL BACKGROUND [1]

"... Before the start of trial, defense counsel told the Court that he had filed an exculpatory evdience motion and had been promised that he could review detective berry's notebook. Id. at 2. The Prosecutor responded that the State had turned over all exculpatory evidence in its possession, and clafified that he would offer the detective's notebook in advance of the detective's expected testimony. Id."

[page 3]

"Detective Berry was the lead detective in the case, and testified that he compiled a notebook consisting of his entire case file during his investigation. Id (at 3-4). Following the fatal shooting, approximately seventeen people from the party were taken to the police station and questioned, Id. Detective Berry testified that none of the seventeen identified petitioner as the shooter, though some stated that he was at the party. Id ... (at 4). Licho Escamilla's (Escamilla) name surfaced during the early part of Detective Berry's investigation. Id. With his brother's consent, the police searched Escamilla's car, where they found a .38 caliber shell. Id. At that time, Escamilla's family informed Detective Berry that escamilla had gone to Mexico. Id. When detective Berry showed the murder victim's father a photo line-up containing pictures of Escamilla, the father failed to identify him. Id. In contrast, he immediately identified Petitioner as the person who shot him. Id. 5. At trial, Detective Berry testified that while he believed Escamilla was shooting a gun at the party, there was no evdience that he shot the victims. Id. He further testified that no one identified Escamilla as the shooter the person who shot the murder victim, and that no one else had excluded Petitioner as the shooter. id. at 7. He reiterated this tetsimony during cross-examination. Id."

[page 4]

"Daniel Barron, the murder victim's cousin, testified that he saw someone wearing a white muscle shirt shooting towards the hosue from the street, and later saw that person drive off in a Cadillac. Id. at 5. While he testified that he did not see who shot his cousin, he later acknowledged that he had told Detectibe

-5-

"Berry after the party that the man in the white shirt shot his cousin before he drove off. Id. Barron maintained at trial that his statement to detective Berry was incorrect, and he did not see the man in the white shirt shooting until after his cousin had been shot. Id. at 6.

"Four witnesses testified on behalf of Petitioner. Antonio Garza testified ... taht he was in Petitioner's house when Petitioner was arrested, but he denied telling Detective Berry at the time of Petitioner's arrest that he did not know where Petitioner was at the time of the shooting. Id. On re-direct, Detective Berry testified that he spoke to Garza on the day of Petitioner's arrest. Id. at 7. Detective berry testified that garza had told him that he did not know where Petitioner was at the time of the shooting, though he thought he was in the back-yard. Id.

"Lucy Montoya also testified that she was Petitioner's friend and had invited Petitioner to the party. id. She testified that at one point at the party people began making gang signs and throwing bottles, so she walked away. Id. She testified that some guys wearing muscle shirts were saying "ledbetter," which is where Escamilla is from. Id. She testified that she never saw Petitioner throw a beer bottle or make gang signs, and that he was with her when the shooting occurred. Id. Montoya also testified that Petitioenr was wearing a "red and blusih" shirt on the night of the incident. Id.

"Joe martinez testified that he saw the murder victim trying to kick people out of the party, when he ehard gunshots. Id. at 7. He fell to the ground at the sound of the shots. Id. When he looked out to the street, he saw two or three guys shooting to thefence, but Petitioenr was not one of them. Id. Martinez knew Petitioner, though not well. Id.

"Petitioner's mother testified that she viewed the video shot during the party, and was able to identify her son. Id. She stated that her son was wearing a red and white checkered shirt. id. Escamilla's girlfriend, jessica garcia, testified that Petitioner and Escamilla looked similar and had similar complexion at the time of the incident. Id.

"At the close of the trial, the prosecutor empathsized Detective Berry's testimony that not one of the seventeen people interviewed by the police could come into the courtroom and tell the jury that Escamilla actually shot the victims, because none of them saw it happen. Id. at 7-8. He further stated that photo line-ups were shown to "lots" of people, but none of these people identified Escamilla as the person who shot the victims. id. at 8. The prosecutor also said that "nobody" identified [Escamilla] as shooting [the victim]. We know that. Nobody identified

-6-

him as KKK shooting him." Id. " See page 5, of Court's Order.

Thereafter, the Court, under "II. PROCEDURAL BACKGROUND" delineates the multiple filings on the state and federal level. See pages 6-7, in Order. Of signifiance the Court again denotes petitioner-movant's two §t claims at issue as being those filed on the state level in his subsequent writ filing, to wit: [1] prosecutorial misconduct through elicitation of false testimony; and [2] ineffective assistance of counsel due to trial counsel's failure to object to the false testimony. See page 6.

Likewsie, the Order again specified the magistrate's Recommendation as "granting Petitioner's petition on the basis of his prosecutorial misconduct claim, finding that both the 'cause and prejudice' and 'fundamental miscarriage of jusctice' exceptions excused his procedural default. see id. at 47. The Magistrate recommended dismissing Petitioner's second ground for relief as procedurally defaulted, and recommended denying the remainder on the merits. Id. Respondent objects only to the Magistrate Judge's recommendation that this Court grant Petitioner's writ on the basis of prosecutorial misconduct. See Respondent's Obj. 1, ECF No. 87." Order at page 7.

Thus, it becomes readily apparent that petitoner-movant's second ground, the ineffective assistance of counsel claim for failing to object to the prosecutorial misconduct claim was recommended as procedurally defaulted. This Court at "V. CONCLUSION held that:

"V. CONCLUSION 4

"... the Findings, Conclusions, and Recommendation of the Magistrate Judge is ACCEPTED in part. The Court adopts and accepts the magistrate Judge's recommendation to DISMISS with prejudice Petitioner's second ground for relief as procedurally barred, and to DENY Petitioner's thrid, fourth and fifth ground of relief with prejudice. The Court however, declines to adopt and accept the Magistrate Judge's recommendation that the Court grant Petitioner relief on his first ground of relief, finding the claim both procedurally barred and unsuccessful on the merits. By separate judgement, the Court formally denies Petitioner's application for a writ of habeas corpus." See pages 25-26 of Order.

# IV
# ARGUMENT AND AUTHORITIES

**ISSUE AT BAR** [restated]:

Petitioner-movant requests the Court to reopen his case and review the procedurally barred claim(s) due to a new rule of law and exception to the procedural default not previously available but recently provided by the Supreme Court in **Trevino-v-Thaler**, No. 11-10189, May 28, 2013.

As previously demonstrated, this Court accepted the Magistrate's recommendation to procedurally bar petitioner-movant's ineffective assistance of counsel claim for failing to object to the elicited and highlighted false testimony of detective Berry. While the Court declined to grant the first ground of error involving said prosecutorial misconduct of eliciting and highlighting false testimont from Detective Berry, and insteead, procedurally barred it likewise.

Thus, these two procedurally barred claims were predicated upon petitioner-movant failing to exhaust said claims on the state level. His claim from the beginning is that the original habeas submission was filed by a retained attorney who failed to file either of the above defaulted claims. Yet, petitioner-movant in his pro se capacity showed due diligence in attempting to bring the issues before the Texas Court of Criminal Appeals. The claims were acknowledged by the texas Court of Criminal Appeals but their denial did not indicate whether they even considered them.

Nonetheless, the Magistrate clearly issued facts that found the prosecutorial misconduct claim as factually founded in the record. Likewise, this Honorable Judge O'Connor slapped the wrist of the trial court's district attorney in the Court's footnotes 4. Therein, it is apparent this Court denounced the conduct of the district attorney as misconduct but because the evidence of innocence was inadequate to provide a gateway thru which the defaulted claims could be reviewed, the Court held that petitioner-movant did not meet his burden to establish an exception under **Coleman-v-Thompson**, 501 U.S, 722, 750 (1991)

Therefore, this request predicated upon **Trevino-v-Thaler**, supra. Therein, the Supreme Court held that their precedent of **Martinez-v-Ryan, supra,** was fully applicable to texas post-conviction litigation. The **mattinez-v-Ryan,** case was

-8-

filed and pending relative to the time this Court was considering it's Order to procedurally default/bar petitioner-movant on the same two issues at bar before the Court, i.e., the Prosecutorial Misconduct Claims and it's interrelated counterpart the Ineffective Assistance of Counsel Claim for failing to object. Had this Court been privy to the new exception the Supreme Court carved out in **martinez-v-Ryan**, supra, and fully applied to Texas prisoner post-conviction litigation, then this Court would have [hopefully] applied said exception to petitioner-movant. Though, the **Trevino**, supra, decision would have compelled this Honorable Judge to consideration the application thereof to petitioner-movant's habeas claims. For as a matter of fact and law it is a shoe that fits petitioner's habeas claims.

In **Martinez-v-Ryan, supra**, the Court held "that a post-conviction attorner's deficient performance in presenting a claim of ineffective assistance of trial counsel may provide adequate cause to excuse procedural default in a federal habeas petition."

Priot to **Martinez**, supra, the rule of **Coleman-v-Thompson**, supra prevailed. But **Martinez** carved out an exception to the general rule of **Coleman**, and held taht a post-conviction attorney's errors in raising claims of IAC at trial can establish excusable cause for a procedural default. **Martinez** at *14.

While in **Trevino**, supra, the Court re-asserted **Martinez**, supra, as providing an exception to **Coleman**, supra. The Court explained and clarified its reasoning for doing so. Then, held that: "We consequently read Coleman as containing an exception allowing a federal habeas court to find 'cause' thereby excusing a defendant's procedural default, where (1) the claim of 'ineffectiue assistance of trial counsel' was a 'substantial' claim, (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding, (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and (4) the state law requires that an 'ineffective assistance of trial counsel [cʋlaim] ... be rasied in an initial-review collateral proceeding." **Martinez**, supra, at ____ [slip op. at 11, 15]."

Thereafter, in **Trevino**, supra, the Court analyzed the Texas System of appeals and concluded that: [under B.2] "For these reasons just stated, we believe that the Texas procedural system - as a matter of its structure, design, and operation - does not offer most defendants a meaningful opportunity to

-9-

present a claim of ineffective assistance of trial counsel on direct appeal."

As a result of the foregoing reasoning the Court fully applied **Martinez**, supra, to Texas.

## CONCLUSION

Besides the foregoing, petitioner-movant sums up his reasons for this Honorable Court to reopen and review his procedurally barred claims. While asking the Court to consider the Evidentiary Hearing testimonies and documentation from the standpoint of determining any substantive constitutional issue(s) rather than determining if adequate evidence of innocence provided a gateway for his defaulted claims; and find that under **Martinez & Trevino**, supras, said claims are not barred from review. In that,

**A.** Both the Magistrate and this Honorable Judge have perceived the prosecutorial misconduct of eliciting and highlighting false testimony to the jury;

**B.** The habeas' attorney's failure to raise the prosecutorial misconduct claim was a deficiency meeting the "cause" requirement of **Coleman**, supra, according to **Martinez & Trevino**, supras. Prejudice arises from trial counsel's failure to discover and/or utilize the lead Detective Berry's Supplemental Police Report which would have foreclosed his false testimony [three times], as well as, foreclosed the prosecutor from empathsizing said false testimony in his closing statements to the jury [three times]. The eliciting and highlighting the false testimony impaired the presumption of innocence, as well as, the alibi defense not being further advanced coupled to Licho Escamilla [the look alike] having committed the crime;

**C.** Petitioner-movant was due diligent in his state level pro se filings to bring the issue(s) at bar before the state court, and diligence is to be considered under **Coleman**, supra's review;

**D.** Finally, because petitioner-movant was pending during the decision making process of **Martinez-v-Ryan**, supra, even as now validated and applied to Texas via **Trevino**, supra, a limited retroactivity ought to apply. Thank you.

Therefore this request for the Court to reopen and review his case anew.

_____
QUINTIN LEE ALONZO: PETITIONER-MOVANT

cc

## VERIFICATION

I, Quintin Lee Alonzo, petitioner-movant in the foregoing 60(b) motion, does hereby swear under penalty of perjury that the facts presented throughout said 60(b) motion are true. I attest to this by affixing my signature below:

SIGNATURE: /Quintin Lee Alonzo/ QUINTIN LEE ALONZO: AFFIANT

## CERTIFICATE OF SERVICE

I, Quintin Lee Alonzo, petitioner-movant in the foregoing 60(b) motion do hereby certify that true copies of said motion were placed in the Robertson Prison mail box addressed to the U.S. Clerk of the United States District Court for the Northern District of texas, Dallas Division at Dallas, texas, on the **16TH DAY OF DECEMBER, 2013.** I attest to this by affixing my signature below:

```
              Quintin Lee Alonzo
    SIGNATURE: QUINTIN LEE ALONZO
      ROBERTSON UNIT # 1157688
         12071    FM    3522
           ABILENE, TX. 79601
```

cc

RECEIVED
DEC 17 2013
CLERK U.S. DISTRICT
NORTHERN DISTRICT

16 December 2013

TO: U.S. Clerk:
   United States District Court
   1100 Commerce Street, Rm. 14A20
   Dallas, Texas 65242
FR: Quintin Lee Alonzo
   Robertson # 1157688
   12071    FM    3522
   Abilene, TX. 79601
RE: Filing of enclosed 60(b) Motion
   in civil action number 3:07-CV-399.

Dear Clerk:

    Please file the enclosed 60(b) motion in the above referenced civil action number. Enclosed is an extra copy of this letter with a self-addressed stamped envelop for your convenience in date-stamping and file-marking said extra letter and returning it to me for my files. Thank you.

Sincerely,

Quintin

cc




Quintin Alonzo
Robertson # 1157007
12071 FM 3522
Abilene, TX 79601

United States Clerk,
United States District Court
1100 Commerce ST., Rm 1A-20
Dallas, Texas 65242

DEC 17 2013